[No. 28111-9-I.   Division One.   January 19, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID EUGENE MAY, *Appellant*.

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*David S. McEachran, Prosecuting Attorney,* and *Betty Brinson, Special Deputy,* for respondent.

COLEMAN, J. — David May appeals the sentence imposed for two counts of vehicular homicide, asserting that the trial court erred in imposing a sentence beyond the standard range and that the interaction of the Sentencing Reform Act of 1981 (SRA) with the vehicular homicide statute violated his constitutional rights to equal protection and due process. We reverse.

At about 1:20 a.m. on June 28, 1990, Frank Schultz had just gone to bed when he heard tires skidding for several seconds, followed by a loud crash. Schultz immediately dialed 911 and then ran to the scene of the accident. He discovered a

truck on its right side facing away from the road and confirmed that the person in the right passenger seat was dead. Another person in the cab was alive but injured.

Shortly thereafter, Bellingham Fire Department paramedics arrived. Schultz helped them remove the survivor from the cab. The survivor, identified as David May, stated several times that his head and chest hurt and that he had difficulty breathing. After removing May from the truck, the paramedics discovered the body of a third person inside the cab. Because the force of the collision had collapsed the right side of the truck, the two remaining victims were pinned in position between the dash and the cab, and machinery was required to remove them. The passengers were later identified as Robert Elsworth and John Hofeditz.

On July 12, 1990, David May was charged under RCW 46.61.520[1] with two counts of vehicular homicide committed by operating a motor vehicle in a reckless manner or with disregard for the safety of others. During trial which followed, testimony was heard from Washington State Patrol officers who were present at the scene of the crime. They testified that the road was dry and bare on the night of the accident, that there were no signs of braking, and that the vehicle had knocked down a road sign and mailboxes and broken off tree branches and tree tops. The officers testified that the damage was consistent with a high speed crash. In addition, they testified that the yaw marks on the road indicated a vehicle speed which created sufficient centrifugal force to cause the tires to begin to roll up onto their sides. One officer estimated that the truck was traveling at 86 m.p.h. at the first yaw mark, and another officer calculated that the vehicle was traveling at 84 m.p.h. increasing to 91 m.p.h. just before the crash.

---

[1]Former RCW 46.61.520(1) provides:

"When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person while under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502, or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle is guilty of vehicular homicide."

At the close of trial, May objected to jury instruction 6[2] and the special interrogatory on the special verdict form.[3] Instruction 6 defined the mental states for committing the crime of vehicular homicide by operating a motor vehicle in a reckless manner or with disregard for the safety of others. The special verdict form asked the jury whether, for each count, the jury was unanimous that the defendant was operating the truck in a reckless manner. May's objections to the jury instructions and special verdict form were overruled. The Superior Court noted that the SRA assigned a higher seriousness level to the crime of committing vehicular homicide by driving in a reckless manner than to committing vehicular homicide by driving with disregard for the safety of others, resulting in a higher standard range for the former.[4] The court determined that it would apply the higher standard range if the jury were unanimous that May had

---

[2]Instruction 6, taken from WPIC 90.05, stated in relevant part:

"To operate a motor vehicle in a reckless manner means driving in a rash or heedless manner, indifferent to the consequences.

"Disregard for the safety of others means an act or omission on the part of a driver in the operation of a motor vehicle which, by its character and the surrounding circumstances, manifests a heedless indifference to the probability that injury to one or more other persons will result from such conduct."

[3]The special verdict form stated:

"If you find the defendant, DAVID EUGENE MAY, guilty of Vehicular Homicide, Count I, answer the following question:

"Is the jury unanimous that the defendant was operating the motor vehicle in a reckless manner?

"ANSWER     X
            ───     ───
            Yes      No

"If you find the defendant, DAVID EUGENE MAY, guilty of Vehicular Homicide, Count II, answer the following question:

"Is the jury unanimous that the defendant was operating the motor vehicle in a reckless manner?

"ANSWER     X           "
            ───     ───
            Yes      No

[4]See RCW 9.94A.320. As of July 1, 1990, seriousness level 8 applies to operating a vehicle under the influence of alcohol or drugs and to operating a vehicle in a reckless manner, whereas seriousness level 7 applies to operating a vehicle with disregard for the safety of others. Because May's criminal history score was "0", his presumptive sentence range for operating a motor vehicle in a reckless

committed vehicular homicide by driving in a reckless manner.

On January 24, 1991, the jury found David May guilty of two counts of the crime of vehicular homicide. In addition, for both counts, the jury found that the defendant was operating the motor vehicle in a reckless manner. At the sentencing hearing held on February 20, 1991, the court used the standard sentencing range for vehicular homicide committed by operating a motor vehicle in a reckless manner as a baseline. However, the court found that the standard range of 21 to 27 months was too lenient because of the multiple victims. Thus, the court imposed an exceptional sentence of 36 months. May appeals.

█ We first consider whether the SRA sentencing structure for vehicular homicide violated May's right to equal protection of the law by providing different sentences for alternative methods of committing the same crime. "Equal protection of the laws under state and federal constitutions requires that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." *Harmon v. McNutt*, 91 Wn.2d 126, 130, 587 P.2d 537 (1978).

Under RCW 46.61.520, vehicular homicide may be committed in three ways: by operating a motor vehicle while under the influence of alcohol or drugs, by operating a vehicle in a reckless manner, or by operating a vehicle with disregard for the safety of others. Previously, all three methods of committing vehicular homicide were assigned the same seriousness level. However, effective July 1, 1990, the statute was modified so that vehicular homicide committed while driving in a reckless manner now results in a higher standard range than vehicular homicide committed by driving with disregard for the safety of others. *See* RCW 9.94A.320. May contends that this disparate sentencing structure is not warranted because there is no meaningful distinction between committing vehicular homicide under the reckless prong of the stat-

---

manner (level 8) was 21 to 27 months, while his presumptive sentence range for operating a motor vehicle with disregard for the safety of others (level 7) was 15 to 20 months. *See* RCW 9.94A.310.

ute and committing vehicular homicide under the disregard for safety prong of the statute.

We disagree. In *State v. Eike*, 72 Wn.2d 760, 435 P.2d 680 (1967), the court defined "disregard for the safety of others" as "an aggravated kind of negligence or carelessness, *falling short of recklessness* but constituting a more serious dereliction than the hundreds of minor oversights and inadvertences encompassed within the term 'negligence.'" (Italics ours.) *Eike*, at 765-66. In *State v. Jacobsen*, 78 Wn.2d 491, 477 P.2d 1 (1970), the court reaffirmed that disregard for safety implies "an aggravated kind of negligence, falling short of recklessness, but more serious than ordinary negligence." *Jacobsen*, at 498. The *Jacobsen* court found that this definition was constitutionally sufficient, because it gave fair notice of the proscribed behavior. *Jacobsen*, at 498.

■ However, although the *Eike* and *Jacobsen* decisions recognize a distinction between driving with disregard for the safety of others and driving in a reckless manner, we agree that the jury instructions given by the trial court did not provide meaningful distinctions between the two means of committing vehicular homicide. Instruction 6, taken from WPIC 90.05, defined driving in a reckless manner as "driving in a rash or heedless manner, indifferent to the consequences", and defined driving with disregard for the safety of others as driving with "a heedless indifference to the probability that injury to one or more other persons will result". Because both methods of committing vehicular homicide were defined as a heedless indifference to the consequences of one's actions, the two methods of committing the crime were basically indistinguishable.[5] *Cf.* 13A R. Ferguson & S. Fine, Wash. Prac., *Criminal Law* § 2104, at 297 (1990) (The

---

[5] We note that heretofore the manner of committing vehicular homicide did not affect calculation of the standard range. Thus, it was not necessary to carefully distinguish between the two prongs in jury instructions, and prior courts often cited the same evidence to support both alternatives. *See State v. Miller*, 60 Wn. App. 767, 774, 807 P.2d 893 (1991) ("driving on the wrong side of the road with one headlight out . . . establishes [both] recklessness and disregard for the safety

definition of "disregard for safety" contained in the pattern instructions "is difficult to distinguish . . . from the definition of 'recklessness.' "). Thus, there was no meaningful way for the jury to determine whether May's driving violated one or both prongs of the statute. Accordingly, although the statute on its face is constitutional, the statute as applied through the jury instructions violated May's right to equal protection of the law.

▇ Next, we determine whether the interaction of the SRA with the vehicular homicide statute violated May's right to due process. In order to survive a due process challenge, a statute must

"provide fair notice, . . . of that conduct which is prohibited, so that persons of reasonable understanding are not required to guess at the meaning of the enactment . . .", and second . . . "contain ascertainable standards for adjudication so that police, judges, and juries are not free to decide what is prohibited and what is not, depending on the facts in each particular case . . .."

*State v. Brayman*, 110 Wn.2d 183, 196, 751 P.2d 294 (1988) (quoting *State v. Carter*, 89 Wn.2d 236, 239-40, 570 P.2d 1218 (1977)).

As our previous analysis indicates, the *Eike* and *Jacobsen* courts recognized a distinction between operating a motor vehicle in a reckless manner and operating a motor vehicle with disregard for the safety of others. However, as also noted, *supra*, the definitions of reckless manner and disregard for safety of others contained in instruction 6 were not clearly distinguishable. Because those definitions were virtually interchangeable, instruction 6 failed to provide the jury with "ascertainable standards for adjudication" and failed the second prong of May's due process claim. Thus, the statute as applied through the jury instructions also

---

of others"); *State v. Barefield*, 47 Wn. App. 444, 459, 735 P.2d 1339 (1987) (causing two deaths by crossing the center line sufficient to prove vehicular homicide by reckless manner and "with disregard for the safety of others"), *aff'd*, 110 Wn.2d 728, 756 P.2d 731 (1988); *State v. Fateley*, 18 Wn. App. 99, 103, 566 P.2d 959 (1977) (driving a motorcycle across the center line and over an embankment sufficient to show both reckless manner and disregard for safety).

violated May's right to due process. Accordingly, the lower standard range must be applied.[6]

Because the sentencing judge may decide at resentencing to reimpose its exceptional sentence, we address whether the Superior Court erred in determining that grounds for an exceptional sentence were established. A trial court may impose an exceptional sentence if it finds there are "substantial and compelling reasons" which justify a sentence outside the standard sentence range. RCW 9.94A.120(2). The statute provides a list of illustrative factors which courts may rely upon to justify an exceptional sentence. *See* RCW 9.94A.390. Among those factors, the statute permits sentencing judges to consider multiple victims of vehicular homicide as an aggravating circumstance. *See* RCW 9.94A.390(2)(g) (citing RCW 9.94A.400[7] and RCW 9.94A.010).[8] The trial court found

---

[6]Our decision will require trial judges in future cases to craft instructions which provide the jury with adequate guidance in distinguishing between the means of committing vehicular homicide if the higher standard range is to be employed. In the meantime, early attention to this issue by the Washington Supreme Court Committee on Jury Instructions is urged.

[7]RCW 9.94A.400(1)(a) provides in pertinent part: "[I]f the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. . . . 'Same criminal conduct,' as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim. This definition does not apply in cases involving vehicular assault or vehicular homicide if the victims occupied the same vehicle. However, the sentencing judge may consider multiple victims in such instances as an aggravating circumstance under RCW 9.94A.390."

[8]RCW 9.94A.010 provides:
"The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences, and to add a new chapter to Title 9 RCW designed to:
"(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;
"(2) Promote respect for the law by providing punishment which is just;
"(3) Be commensurate with the punishment imposed on others committing similar offenses;
"(4) Protect the public;
"(5) Offer the offender an opportunity to improve him or herself; and
"(6) Make frugal use of the state's resources."

that "[t]he multiple victims in this case constitute an aggravating factor and justify an exceptional sentence outside of the standard range." May contends that this was error.

However, to reverse an exceptional sentence, a reviewing court must find that the trial court's reasons for imposing the sentence "are not supported by the record", that the trial court's reasons "do not justify a sentence outside the standard range", or "that the sentence imposed was clearly excessive". RCW 9.94A.210(4);[9] *State v. McAlpin*, 108 Wn.2d 458, 462-63, 467, 740 P.2d 824 (1987). The record clearly supports the fact that two victims were killed because of May's driving. In addition, it is clear from the statute and the case law that the presence of multiple victims is an aggravating factor which justifies the imposition of an exceptional sentence. *See* RCW 9.94A.390, .400; *State v. Davis*, 53 Wn. App. 306, 308, 313, 766 P.2d 1120 (multiple victims of vehicular homicide an aggravating circumstance justifying a sentence beyond the standard range), *review denied*, 112 Wn.2d 1015 (1989). Thus, it was not error to impose an exceptional sentence.

Because the "[i]mposition of an exceptional sentence is directly related to a correct determination of the standard range", *State v. Collicott*, 118 Wn.2d 649, 660, 827 P.2d 263 (1992), we reverse and remand for resentencing based upon the lower standard range.

GROSSE and BAKER, JJ., concur.

---

[9]RCW 9.94A.210(4) provides:

"To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient."