[No. 12644-7-III.   Division Three.   May 26, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. EFRAIN SALAS, *Appellant.*

*Paul J. Wasson,* for appellant.

*John D. Knodell, Prosecuting Attorney,* and *Jerald R. Hamley, Deputy,* for respondent.

SCHULTHEIS, J. — A jury convicted Efrain Salas of vehicular homicide. On appeal he challenges the court's jury instruction on the elements of the crime and the special verdict form used with it, and the sufficiency of the evidence. We reverse and remand for a new trial.

On April 3, 1992, Mr. Salas, Miguel Soto and Humberto Jimenez were driving north on SR 243 in a Dodge. In the intersection where SR 243 joins SR 26, at about 6:30 p.m., the Dodge collided with a Nissan driven by Ginger Lynn. Ms. Lynn died that evening. The police investigation indicated all three men had been drinking, the Dodge hit the Nissan after running a stop sign, and Mr. Salas was the driver. Mr. Salas was arrested and charged with vehicular homicide, RCW 46.61.520.[1] Mr. Soto and Mr. Jimenez were held as material witnesses. A jury trial commenced June 8. The primary issue in dispute was the identity of the driver of the Dodge.

Washington State Patrol Trooper Michael Garland was the first law enforcement officer to arrive at the scene, about 25 minutes after the accident. Ms. Lynn was still partially in her vehicle. Mr. Jimenez was lying on the ground a few feet from the passenger door of the Dodge. Mr. Soto was kneeling near Mr. Jimenez, trying to talk to him, but Mr. Jimenez seemed to be unconscious. Mr. Salas was lying on the ground about 20 feet away from the Dodge. Paramedics were attending the injured occupants of the vehicles.

---

[1]RCW 46.61.520 provides in pertinent part:

"(1) When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle:

"(a) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502; or

"(b) In a reckless manner; or

"(c) With disregard for the safety of others."

Trooper Garland tried to ascertain the identities of the three men, but learned only that Mr. Soto's first name was Miguel. All three smelled strongly of intoxicants and Trooper Garland found several empty cans of beer in and around the Dodge, together with a full half case of beer and a partially empty half case of beer in the back seat.

The paramedics transported Ms. Lynn, Mr. Soto and Mr. Jimenez by ambulance to a hospital in Ellensburg. A helicopter arrived a short time later and took Mr. Salas to a hospital in Yakima. Blood samples were taken at the hospitals from the three men. Mr. Salas' blood alcohol concentration was .15 percent. Ms. Lynn died at the hospital from internal injuries she received in the accident. After the three men were examined and their injuries treated, they were released from the hospitals and transported to the Grant County Jail.

Mr. Jimenez had the worst injuries: he had cuts and bruises on his head, lip, tongue, jaw, neck and thigh, all on the left side of his body. The cut on his head required stitches. Mr. Soto had a bruise on his chest. Mr. Salas had a bruise on his left elbow and a cut on his left cheekbone. Mr. Jimenez' injuries were consistent with the damage inside the Dodge which would have been caused by the person in the front passenger seat.

Washington State Patrol Trooper Gary McNinch reconstructed the accident and concluded the Nissan was in the intersection, eastbound on SR 26, when the Dodge struck it broadside. At impact, the Dodge was beyond the stop sign and stop line in the northbound lane of SR 243. There were no braking or skid marks from either vehicle. There were no estimates of speed, but the posted speed limit for SR 26 at that location was 55 m.p.h.

The Dodge belonged to Mr. Soto, but was not yet registered to him. Mr. Soto testified he and Mr. Salas drove from Moses Lake to Mattawa to look for work. They were going to meet Mr. Jimenez, who had a possible job lead. Mr. Soto said he drove to Royal City, where they stopped for lunch and each drank one beer. He then let Mr. Salas drive

to Mattawa because he did not have a license and did not want to get caught driving. When they got to Mattawa they stopped at a store. Mr. Soto bought a 6-pack of beer, then drove again because he knew where Mr. Jimenez lived. Mr. Jimenez told them there was work on Monday, so they all sat around and drank beer. Then all three of them headed for Moses Lake, with Mr. Salas driving, Mr. Jimenez in the front passenger seat and Mr. Soto in the back seat. Along the way Mr. Salas got stuck in the sand when he stopped the Dodge at the side of the road so they could relieve themselves. A passing motorist pulled them out. Mr. Soto testified that as they approached the SR 26 intersection he did not think Mr. Salas saw the stop sign. He tried to warn him, but it was too late. After the accident, Mr. Soto said he pushed the passenger door open to get out and Mr. Jimenez fell halfway out. Mr. Soto pushed him down, and pulled him out as he got out. On cross examination Mr. Soto acknowledged he drove from Royal City to Mattawa, but maintained Mr. Salas was driving at the time of the accident.

Mr. Jimenez also testified Mr. Salas was driving when they left Mattawa for Moses Lake. He said he was sitting in the passenger seat because he felt sick and did not want to sit in the back seat. According to Mr. Jimenez, Mr. Salas continued to drive after they were pulled out of the sand. After that, however, Mr. Jimenez fell asleep, or passed out, from all the alcohol he had consumed. He did not remember anything else until he was in the hospital.

Andre Pieratt testified he was driving north on SR 243 when the Dodge pulled onto the highway in front of him. He said the vehicle was being driven erratically and swerving into the oncoming lane. After the Dodge nearly collided head on with a southbound vehicle, Mr. Pieratt pulled into a convenience store and used the phone to call 911. He reported the incident, saying he believed the driver was drunk. It was about 6:05 p.m. He continued north and after just a few miles passed the Dodge, which had pulled off the road in the sand near Wanapum Village. At the intersection of SR 243 and SR 26, Mr. Pieratt waited about 5 minutes for the

police; when no one came, he drove into George. There, he made a second call to the State Patrol. He recalled seeing three people in the car, but could not identify Mr. Salas as the driver.

Dale Bye, who lives in Wanapum Village, pulled the Dodge out of the sand where it was stuck about 200 to 300 yards from his house. Neither he nor his wife, however, saw who drove the vehicle as he pulled it free or when it again entered the highway.

According to the statements Mr. Salas gave the police, Mr. Soto and Mr. Jimenez picked him up as he was hitchhiking back to Moses Lake. He recognized Mr. Soto, but did not really know him. They asked him to drive. He did so, although he did not want to because he had outstanding tickets. After he got stuck in the sand, he said they would not let him drive anymore. Mr. Jimenez took over as driver, Mr. Soto got into the back seat and he got into the front passenger seat. Mr. Salas said he did not remember how they got into the accident, but he was thrown from the car and then woke up, or came to.

The State rested. Mr. Salas presented no evidence and did not testify.

RCW 9.94A.320 makes vehicular homicide committed while under the influence of intoxicants or drugs or in a reckless manner a level 8 offense, and vehicular homicide committed with disregard for the safety of others a level 7 offense. To address the different offense levels applicable to the crime depending on the way it is committed, the court gave a special "to convict" instruction and verdict form. There were no exceptions to the jury instructions. The jury found Mr. Salas guilty on the basis of intoxication or reckless driving. The court sentenced him to 41 months, the top of the standard range for the level 8 offense.

We first consider whether the court erred by giving instruction 5, together with the special verdict form. Because the State charged Mr. Salas with all three alternate ways to commit vehicular homicide, it was required to produce substantial evidence of each. It did so. The jury was not required

to be unanimous as to any particular alternative, but we know from the special verdict form[2] that the jury based its finding of guilt on either or both of the first two alternatives: he drove while under the influence of alcohol or in a reckless manner. We don't know which alternative the jury relied on, and therein lies the problem.

A literal reading of the vehicular homicide statute, RCW 46.61.520, would not require that the effect of intoxicants on the defendant be a proximate cause of the injury and resulting death. To avoid a "strict liability" result, however, the Supreme Court and the Court of Appeals have added an additional essential element to the offense: there must be a causal connection between intoxication and injury. *State v. MacMaster*, 113 Wn.2d 226, 231, 778 P.2d 1037 (1989).

*MacMaster*, at 235, reversed a vehicular homicide conviction because the jury instruction[3]

---

[2]The special verdict form provided:

"1. First, answer the following:

"We, the jury, unanimously find the defendant, EFRAIN SALAS:
                              "Guilty
                    "(write in 'guilty' or 'not guilty')
"of the crime of Vehicular Homicide as charged in the Information.

"INSTRUCTION: If you answered 'guilty' above, proceed to No. 2. If you answered 'not guilty,' do not answer any further question. The foreperson should sign the Verdict Form and notify the Bailiff.

"2. We, the jury, unanimously find the defendant, EFRAIN SALAS, committed the crime of Vehicular Homicide by driving a vehicle either:

"(a) while under the influence of intoxicating liquor or any drug, or

"(b) in a reckless manner.
                              "Yes
                    "(write in 'yes' or 'no')
"INSTRUCTION: If you answered 'no' above, proceed to No. 3. If you answered 'yes,' do not answer any further question. The foreperson should sign the Verdict Form and notify the Bailiff.

"3. We, the jury, unanimously find the defendant, EFRAIN SALAS, committed the crime of Vehicular Homicide by driving a vehicle with disregard for the safety of others.
                         "(write in 'yes' or 'no')"

[3]In *MacMaster*, at 229 (quoting instruction 5), the defendant was convicted of vehicular homicide by a jury that was instructed as follows:

"To convict the defendant of the crime of vehicular homicide, each of the following elements of the crime must be proved beyond a reasonable doubt:

*only required the defendant's driving to have been the cause of the accident.* In order to convict, the jury merely had to find that, coincidentally, defendant was also under the influence. This is not a proper statement of the law. For defendant to be guilty of vehicular homicide, the condition of impairment due to alcohol must have been a proximate cause of the fatal accident.

(Italics ours.)

The extra nonstatutory element was missing in this case. The jury was instructed:

To convict the defendant of the crime of vehicular homicide, each of the following elements of the crime must be proved beyond a reasonable doubt:

1. That on or about the 3rd day of April, 1992, the defendant drove a vehicle;

2. *That the defendant* drove the vehicle:

a. *while under the influence of intoxicating liquor or any drug,* or

b. in a reckless manner, or

c. with disregard for the safety of others; and

3. *The defendant's driving proximately caused injury to another person;* and

4. Said injury proximately caused the other person to die within three years of the injury; and

5. The injury occurred in Grant County, Washington.

If you find that elements 1, 3, 4, 5 and either 2(a), 2(b) or 2(c) have been proved beyond a reasonable doubt, then your verdict should be "guilty." On the other hand, if you have a reasonable doubt as to any one of elements 1, 3, 4 and 5, or a reasonable doubt as to all three parts of element 2, then your verdict should be "not guilty."

In regard to element two, in order to convict the defendant, the state must prove either 2(a) or 2(b), or must prove 2(c). As between 2(a) and 2(b), only one need be proved, and you need not unanimously agree as to which one is proved, so long as you each

---

"(1) That on or about the 22nd day of April, 1985, the defendant operated a motor vehicle;

"(2) That at the time, the defendant:

"(a)  operated the motor vehicle and was under the influence of, or affected by intoxicating liquor, and thereby proximately caused injury to Rhonda Raber, or

"(b)  operated the motor vehicle in a reckless manner and thereby proximately caused injury to Rhonda Raber, or

"(c)  operated the motor vehicle with disregard for the safety of others and thereby proximately caused injury to Rhonda Raber;

"(3) That Rhonda Raber died as a proximate result of the injuries; and

"(4) That the injury occurred in Grant County, Washington."

find that either 2(a) or 2(b) has been proved beyond a reasonable doubt. If you so find, you need not consider whether the state has proved 2(c). On the other hand, if you do not unanimously agree that either 2(a) or 2(b) has been proved, you then must consider whether 2(c) has been proved beyond a reasonable doubt.

(Italics ours.) Instruction 5. Under *MacMaster*, the instruction in this case contains an erroneous statement of the law: it did not require the jury to find that impairment due to alcohol was a proximate cause of the fatal accident.

Nor is the error cured by reading instruction 5 together with the preceding definitional instruction, which reads:

A person commits the crime of Vehicular Homicide when he drives any vehicle while under the influence of intoxicating liquor or any drug, or in a reckless manner, or with disregard for the safety of others, and thereby proximately causes the death of any person within three years of such driving.

Instruction 4. The instruction accurately defines the offense in statutory terms, but omits the nonstatutory element required by *MacMaster*. To convict, the State must show the defendant caused mortal injury while driving under the influence of an intoxicant and that the driver's drinking impaired his ability to drive. A causal relationship between the impairment and the death must be established. Instructions 4 and 5, even when read together, do not require proof of this causal connection.

Failure to object to a jury instruction generally precludes appellate review of the instruction; however, instructional errors of constitutional magnitude may be challenged for the first time on appeal. RAP 2.5. It is a constitutional requirement that the jury be instructed as to each element of the offense charged. *State v. Smith*, 56 Wn. App. 909, 913, 786 P.2d 320 (1990).

Because we do not know whether the jury relied on the intoxication prong of the instruction to reach its verdict, it cannot be said that the error in no way affected the outcome of the case. *MacMaster*, at 234-35. Giving instruction 5 was reversible error.[4]

---

[4]In light of our decision on this issue, we do not address the sufficiency of the evidence.

We do not discern any other problem with instruction 5, or with the special verdict form.[5] Each simply provides a means for determining the offense level for sentencing purposes. Instruction 5 clearly states the jury may convict if it finds any one of the three alternatives, plus all the other elements. The jury could find all three alternatives have been proved, in which case the higher standard range would be applicable. There is no harm in telling the jury it does not need to consider the third alternative if it finds the defendant guilty of either of the first two: it simply precludes a conviction based on all three alternatives. If anything, the defendant benefits. The instruction and verdict form could have asked if the jury unanimously found the State proved the third alternative as well. Had the jury done so, the conviction could be affirmed and Mr. Salas would be facing resentencing instead of retrial.

We reverse and remand.

SWEENEY, A.C.J., and MUNSON, J., concur.

Review granted at 125 Wn. 2d 1007 (1994).

---

[5]There are no cases giving the courts guidance on structuring vehicular homicide instructions so that a court may employ the higher presumptive range at sentencing without violating the defendant's rights at trial. Another court grappled with the problem in *State v. May*, 68 Wn. App. 491, 494-97 & nn.2-6, 843 P.2d 1102 (1993). The error there, as here, was failure to properly define the elements so it is unclear whether the special verdict form used in that case would have resolved the sentencing problem.