[No. 30300-7-I.    Division One.    May 1, 1995.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT EUGENE FORTUNE, *Appellant.*

*Rita J. Griffith* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Pamela Mohr, Deputy,* for respondent.

AGID, J. — Robert Fortune appeals his conviction for first degree murder on the ground that the trial court's refusal to give the jury a unanimity instruction violated his right to

due process and that prosecutorial misconduct deprived him of a fair trial. We affirm.

## FACTS

In late 1990, Fortune and Gregory Miller rented an apartment together. In January 1991, Miller was found dead in the apartment, his skull crushed by multiple blows. Fortune was subsequently arrested and charged with premeditated first degree murder and felony first degree murder. Based on Fortune's use of Miller's cash machine card after Miller's death, the State charged first and second degree robbery as the felonies underlying the felony murder charge.

At trial, Fortune admitted that he killed Miller but argued that he neither premeditated the murder nor committed the robbery. Over the State's objection, the trial court instructed the jury on the lesser included offense of second degree murder. Over defense objection, the court also instructed the jury that it did not need to be unanimous as to the specific means Fortune used to commit the murder. By general verdict, the jury found Fortune guilty of first degree murder.

## DISCUSSION

## I

## Jury Unanimity

### A. Federal Constitution

■ ■ Fortune challenges the trial court's refusal to instruct the jury that it needed to be unanimous as to the means by which he committed first degree murder. Under our case law, first degree felony murder and premeditated murder are alternative means of committing first degree murder, not separate crimes. *See State v. Ellison*, 36 Wn. App. 564, 676 P.2d 531, *review denied*, 101 Wn.2d 1010 (1984); *see also State v. Whitney*, 108 Wn.2d 506, 739 P.2d 1150 (1987); *State v. Arndt*, 87 Wn.2d 374, 553 P.2d 1328 (1976). Thus, where a defendant is charged with alternative means of committing the offense, the jury does not need to be unanimous as to which means the defendant employed in committing it as long as substantial evidence supports each means. *Ellison*, 36 Wn. App. at 574; *Arndt*, 87 Wn.2d at 376.

Fortune acknowledges that he was not entitled to a unanimity instruction under existing state case law. He contends, however, that the cases cited above do not decide whether the lack of jury unanimity implicates federal, rather than state, due process rights. He argues that the Supreme Court's opinion in *Schad v. Arizona*, 501 U.S. 624, 115 L. Ed. 2d 555, 111 S. Ct. 2491 (1991) mandates a new and different analysis of this issue.

Edward Schad was charged with first degree felony murder and premeditated murder under Arizona law. As in Fortune's case, the jury convicted him of first degree murder by general verdict. 501 U.S. at 629. Arizona's first degree murder statute, like Washington's, defined premeditated murder and first degree felony murder as alternative means of committing first degree murder. Schad argued that these alternative means were, in fact, separate offenses and that jury unanimity as to which means he had used in committing first degree murder was therefore required. 501 U.S. at 630-31. A plurality in *Schad* identified the issue presented as whether a legislature may define the alternative means of committing a crime with means that do not have the same mental states. 501 U.S. at 631-32. The issue, therefore, was whether the Arizona Legislature could define premeditated first degree murder, for which the mental state is premeditation, and felony murder, for which the mental state is intent to murder combined with the commission of another felony, as alternative means of committing first degree murder without offending due process. 501 U.S. at 630-32.

The plurality concluded that Arizona's statutory scheme was constitutionally permissible. In so doing, it acknowledged that a legislature's ability to define different acts, or states of mind, as alternative means of committing a single offense is limited by the due process clause. 501 U.S. at 632. When presented with a due process challenge, a court must therefore determine whether the legislature has gone beyond the "point at which differences between means become so important that they may not reasonably be viewed as alternatives to a common end, but must be treated . . . as separate offenses".

501 U.S. at 633. The plurality recognized that it is impossible to lay down a single model for making this determination. In the case before it, however, it concluded that where different mental states are used to satisfy the mens rea element of a single offense, they must "reasonably reflect notions of equivalent blameworthiness or culpability". 501 U.S. at 643. Whether a legislature may constitutionally define two mental states as equivalent depends not on whether everyone would agree that the two mental states are moral equivalents, but whether "such equivalence could reasonably be found". 501 U.S. at 644.

Turning to the case at hand, Fortune bases his argument on the *Schad* plurality's "moral equivalents" language. He contends that because our Legislature has determined that only one means of committing first degree murder, premeditated murder, can be elevated to aggravated murder, it has determined that the alternative means of committing murder are not moral equivalents.[1] We do not agree with Fortune's reading of *Schad* or his application of the case in this context. First, *Schad* did not decide the issue presented here. The issue in *Schad* was whether it is a violation of due process not to require jury unanimity as to the means by which the defendant has committed a crime where the Legislature has defined the elements of the crime using alternative means that have different mental states. *Schad* did not decide whether a defendant may be sentenced to a higher penalty that attaches to only one of the alternative means of committing the crime in the absence of jury unanimity as to that means.

---

[1]First degree murder can be committed by three means: premeditated murder, engaging in conduct manifesting an extreme indifference to human life, and felony murder. RCW 9A.32.030(1). First degree murder is a class A felony and carries a maximum punishment of life imprisonment, a fine, or both. RCW 9A.32.030(2); RCW 9A.20.021(1)(a). RCW 10.95.020 defines the crime of aggravated first degree murder as premeditated first degree murder plus proof of one or more enumerated aggravating circumstances. The punishment for aggravated first degree murder is either life in prison without the possibility of parole or death. RCW 10.95.030. Momentarily setting aside Fortune's aggravation argument, we note that Washington's first degree murder statute is clearly constitutional under *Schad*. The Arizona statute upheld in *Schad* was based on the same mental states as ours and contains no relevant differences from the one we consider here. *See* former Ariz. Rev. Stat. Ann. § 13-452 (Supp. 1973); RCW 9A.32.030.

■ Furthermore, *Schad* does not support Fortune's argument that the existence of a potentially higher penalty for one of the alternative means mandates the conclusion that the Legislature has determined that the mental states of the alternative means are not moral equivalents. The Arizona statute considered in *Schad* authorized the same maximum penalty, death, for both the felony murder and premeditated murder means of committing first degree murder. 501 U.S. at 644 n.9. However, the plurality did not rely on the fact that the two carried the same penalty in determining that the mental states of the two means are moral equivalents. Punishment was not relevant to the *Schad* plurality's resolution of the question of whether the Arizona Legislature had violated due process in defining the alternative means of committing first degree murder. We conclude that *Schad* does not support the proposition that differences in potential punishments for alternate means of committing a crime are relevant to the determination of whether the Legislature has improperly defined the means in the first place. To the contrary, the *Schad* plurality specifically recognized that the question of whether a defendant may, without jury unanimity, be constitutionally *convicted* under a statute that has alternative means with different mental states is a separate issue from whether he or she may be constitutionally *sentenced* under a statute that carries different penalties for alternative means of committing a crime. *See* 501 U.S. at 644 n.9. *Schad* has not altered existing case law in this area.

■ A higher actual or potential penalty for an alternative means of committing a crime reflects a number of public policy considerations which do not necessarily correlate to the moral equivalency of the mens rea of the alternative means of committing a crime. The aggravated murder statute, for example, evinces a public policy that premeditated murder of certain victims, by certain persons, or under certain circumstances should be punished more severely than other instances of premeditated murder. *State v. Baruso*, 72 Wn. App. 603, 617, 865 P.2d 512 (1993), *review denied*, 124 Wn.2d 1008 (1994); RCW 10.95.020; *cf. State v. Worl*, 74 Wn. App. 605, 613-14, 875 P.2d 659 (1994) (distinguishing between substan-

tive crimes and sentence enhancements), *review granted*, 125 Wn.2d 1014 (1995). It is the presence of these additional facts that the Legislature has determined makes the crime more reprehensible or socially harmful than it would be in the absence of those facts. This determination does not affect the mens rea of the underlying crime. Furthermore, the Legislature may have determined that imposing a higher penalty in certain contexts will provide an added deterrent to committing the crime.

The aggravated murder statute is analogous to the deadly weapon and school zone sentencing enhancements.[2] Under RCW 9.94A.125, the State may charge a defendant with an assault or a robbery while armed with a deadly weapon. Similarly, it may seek to enhance a drug offender's sentence by charging him or her with delivery of a controlled substance near a school. RCW 69.50.435(a); *State v. Silva-Baltazar*, 125 Wn.2d 472, 478-79, 886 P.2d 138 (1994). The availability of these or other sentence enhancements does not change the mens rea or moral culpability of the underlying crimes of assault, robbery or delivery of a controlled substance. Similarly, in the context of the first degree murder statute, aggravation does not alter the mens rea of the underlying crime, first degree premeditated murder. *See Silva-Baltazar*, 125 Wn.2d at 478-79.

We are mindful of a concern expressed by the dissent in *Schad*, that failing to ascertain whether the jury was unanimous as to the means of committing a crime could result in imposition of a higher penalty without requiring the jury to find the facts necessary to establish the alternative means. *See* 501 U.S. at 659 (White, J., dissenting). In the context of our criminal code, however, such a scenario will not arise. Under Washington law, aggravated murder must be specifically charged by the State and found by the jury. In order to find that a first degree murder was aggravated, the jury

---

[2]*See Baruso*, 72 Wn. App. at 617 (observing that a "statutory aggravating circumstance is not an element of the crime, but an 'aggravation of penalty' provision that allows an increased penalty when circumstances increase the gravity of the offense", and noting that "it is analogous to a finding of a deadly weapon enhancing the penalty for certain felonies").

must first find that the underlying murder was premeditated. Thus, before a penalty for aggravated murder can be imposed, there must first be jury unanimity as to the premeditation means of committing first degree murder. Under our law, therefore, it is not possible for a defendant to receive a sentence for aggravated first degree murder without jury unanimity as to the underlying premeditated murder.

B. State Constitution

Fortune further argues that the lack of a unanimity instruction violated his state constitutional right to a unanimous jury verdict and his state constitutional right to a jury of 12 because there may have been a patchwork verdict with fewer than 12 agreeing on which means the State had proved. Const. art. 1, § 21. As discussed above, lack of unanimity as to the means by which he committed the crime is constitutionally acceptable because the two means with which Fortune was charged are alternate means and not separate crimes. *Contrast State v. Arndt*, 87 Wn.2d 374, 376, 553 P.2d 1328 (1976) (where alternate means charged, jury unanimity as to means not required) *with State v. Petrich*, 101 Wn.2d 566, 569-70, 572, 683 P.2d 173 (1984) (where multiple criminal acts are charged, unanimity instruction or election by State required to assure all 12 jurors agree on which *act* has been proved beyond a reasonable doubt). There was no violation of Fortune's state constitutional rights, and the trial court properly instructed the jury.

II

Prosecutorial Misconduct

■ Fortune contends that the prosecutor committed misconduct during closing argument by urging the jury to ignore the instruction regarding the lesser included crime of second degree murder. The challenged passage reads:

> The second thing I want to say about lesser included offenses is this: Do not compromise this case. In the face of this evidence, if you have a reasonable doubt as to whether the State has proved this, or this, you can walk Mr. Fortune out of here. Don't compromise this case.

This argument, he contends, was tantamount to telling the jury to disregard the court's instruction on applicable law

and appealed to the passion and prejudice of the jury. *See State v. Claflin*, 38 Wn. App. 847, 850, 690 P.2d 1186 (1984), *review denied*, 103 Wn.2d 1014 (1985). We reject Fortune's argument that the prosecutor committed misconduct in making this argument. It does not tell the jury to ignore the court's instructions or Fortune's theory of the case, *i.e.*, that he had committed only second degree murder. Rather, the prosecutor simply advised the jury that the State sought either a first degree murder conviction or an acquittal but did not want a second degree murder conviction. The comment was made near the beginning of the State's closing argument, and the remainder addressed the State's theory that Fortune had committed first degree murder. The challenged argument came during the State's closing, and the defense was able to rebut it and argue its own theory of the case. There was no misconduct.

The conviction is affirmed.

KENNEDY, A.C.J., and GROSSE, J., concur.

Review granted at 127 Wn.2d 1016 (1995).