[No. 30128-4-I.   Division One.   May 1, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. THANH DONG TANG, *Appellant*.

*Kevin Cole* and *Suzanne Elliott* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Patricia Eakes, Deputy,* for respondent.

AGID, J. — In 1991, the State charged Thanh Dong Tang with vehicular homicide in the death of Kam Chow. In the information, the State alleged two alternative means of com-

mitting the crime: driving under the influence of intoxicants and driving with disregard for the safety of others. Tang moved to dismiss the charge on the ground that the information was defective. The trial court denied the motion. Tang also proposed a unanimity instruction as to the alternate means of committing vehicular homicide with which he was charged. The trial court refused to give this instruction. Tang was found guilty as charged, and he appeals. We find no error and affirm.

## MOTION TO DISMISS

■■ Tang assigns error to the trial court's denial of his motion to dismiss on the ground that the information was defective. The State charged Tang under former RCW 46.61.520.[1] That statute defines three alternate means by which vehicular homicide can be committed: (1) driving a vehicle while under the influence of intoxicating liquor or drugs (DWI); (2) operating a vehicle in a reckless manner; or (3) operating a vehicle with disregard for the safety of others. The Supreme Court has interpreted the statute to require a causal connection between the defendant's alcohol consumption, reckless driving or disregard for the safety of others and the victim's death.[2] *State v. MacMaster*, 113 Wn.2d 226, 231, 778 P.2d 1037 (1989);[3] *State v. Sanchez*, 62 Wn. App.

---

[1]The Legislature amended the structure of RCW 46.61.520 in 1991. The substance of the statute remains the same.

[2]In each case, the violation must be the proximate cause of the injury. The injury, in turn, must be a proximate cause of death. *State v. McAllister*, 60 Wn. App. 654, 657-58, 806 P.2d 772 (1991).

[3]Tang has filed a motion to stay proceedings in this case pending the Supreme Court's resolution of *State v. Salas*, 74 Wn. App. 400, 873 P.2d 578, *review granted*, 125 Wn.2d 1007 (1994). *Salas* presents the issue of whether RCW 46.61.520 requires the defendant's intoxication be a proximate cause of the victim's death. The Supreme Court's resolution of *Salas*, therefore, may impact its holding in *MacMaster* and cases relying on *MacMaster*. The issue presented in *Salas*, however, is not before us. We are not deciding whether causation is a required element of the DWI means of committing vehicular homicide. Rather, we are deciding whether this element was properly alleged in the charging document. Because we conclude that it is, whatever result the Supreme Court reaches in *Salas* will have no bearing on the result we reach here. The Appellant's motion to stay the proceedings in this case is therefore denied.

329, 814 P.2d 675 (1991). This causal connection is a nonstatutory element of the crime which must be included in a charging document. *See State v. Vangerpen*, 125 Wn.2d 782, 888 P.2d 1177 (1995); *State v. Kjorsvik*, 117 Wn.2d 93, 101-02, 812 P.2d 86 (1991) (all essential statutory and nonstatutory elements of an alleged crime must be included in the charging document).

Since this case was argued, the Supreme Court has held that *Kjorsvik*'s liberalized standard of review in construing charging documents does not apply where the sufficiency of an information is challenged prior to verdict. *Vangerpen*, 125 Wn.2d at 788. Here Tang moved to dismiss at the close of the State's case and we are therefore required to strictly construe the information pursuant to *Vangerpen*. Under the strict construction test, the language in the information must clearly suggest the requisite elements of the charged crime. *State v. Johnson*, 119 Wn.2d 143, 829 P.2d 1078 (1992).

Tang contends the information was facially deficient because it failed to advise him that the State must prove a causal connection between his alcohol impairment and the victim's death. The relevant portion of the information provides:

> That the defendant THANH DONG TANG in King County, Washington on or about March 9, 1991, while operating a motor vehicle in said county and state, did drive such motor vehicle while under the influence of intoxicating liquors and drugs, and did operate such motor vehicle with disregard for the safety of others, and the defendant thereby caused the death of Kam Chow, who died on March 9, 1991, as a proximate result of an injury proximately caused by such driving and operation . . ..

We find that this language is facially sufficient to allege the nonstatutory element of causation. The information alleges that Tang drove under the influence and "*thereby* caused the death of Kam Chow". (Italics ours.) The information, therefore, alleges a causal connection between Tang's intoxication and Chow's death. The information further alleges that Chow died "as a proximate result of an injury proximately caused

by *such* driving". (Italics ours.) This language links the death, the injury and the driving. Accordingly, we hold that the information is sufficient on its face to allege all the essential statutory and nonstatutory elements of the crime.[4]

Tang argues that the language in the information was insufficient under *MacMaster*. MacMaster challenged a to-convict instruction on the same ground that Tang challenges the information here. There, the court instructed the jury that to convict MacMaster it needed to find that he operated a motor vehicle

> under the influence of, or affected by intoxicating liquor, and thereby proximately caused injury to [the victim] . . .
>
> . . .
>
> . . . That [the victim] died as a proximate result of the injuries . . ..

*MacMaster*, 113 Wn.2d at 229. The court held the instruction was defective because it did not require the jury to find a causal connection between the defendant's alcohol consumption and the victim's death. Unlike the language of the instruction in *MacMaster*, the language in the information here clearly alleges that Tang's driving, which was affected by intoxicants, proximately caused Chow's death.

Tang also relies on *State v. Sanchez, supra,* in which the defendant challenged the following information:

> [W]hile under the influence of intoxicating liquor or drugs; or by operation of a vehicle in a reckless manner; or with disregard for the safety of others, [the defendant] did drive a vehicle injuring [the victim], whose death was the proximate result of that injury.

62 Wn. App. at 332. Applying *Kjorsvik*'s liberalized standard of review,[5] we held that this information was sufficient because a causal connection between the criminal conduct and the victim's death could be fairly implied from the language in the information. 62 Wn. App. at 333. Tang argues that the information in *Sanchez* is substantially similar to

---

[4]Tang does not contend that the information fails to allege a causal connection as to the other means with which he was charged — operating a motor vehicle with disregard for the safety of others.

[5]Sanchez challenged the information for the first time on appeal.

the one he is challenging and that, in order to conclude that it is sufficient, we would be required to liberally construe the information as the *Sanchez* court did. Although we conclude that we are required to strictly construe the information, we do not find Tang's argument persuasive. The language of the information in *Sanchez* only alleged that the defendant injured the victim in the course of driving while intoxicated, driving recklessly, or driving with disregard for the safety of others and that the injury was the proximate cause of the victim's death. 62 Wn. App. at 332. Unlike the information in this case, the *Sanchez* information contained no language directly linking any of the three alternate behaviors with the eventual death of the victim.

### Jury Instruction

■ Tang also argues that the trial court's failure to give a unanimity instruction violated his federal due process rights under *Schad v. Arizona*, 501 U.S. 624, 115 L. Ed. 2d 555, 111 S. Ct. 2491 (1991). In *Schad*, a plurality of the United States Supreme Court held that a legislature may define alternate means of committing a crime with methods that do not share the same mental state without violating due process so long as the different mental states could reasonably be considered general moral equivalents. *Schad*, 501 U.S. at 643;[6] *see also State v. Fortune*, 77 Wn. App. 628, 893 P.2d 670 (1995). Tang contends that the fact that the Legislature assigned different seriousness levels to the alternative means of committing vehicular homicide mandates the conclusion that it must have determined that the mental states of the alternative means are not moral equivalents.[7] He argues, therefore, that

---

[6]Schad was charged with first degree felony murder and first degree premeditated murder. He was convicted of first degree murder by general verdict. A plurality of the Court concluded that the mental states of felony murder (which is intent to murder combined with an independent felony) and premeditated murder could reasonably be considered moral equivalents and that defining the two as alternative means, rather than separate crimes, did not offend due process.

[7]Prior to July 1, 1990, all three means of violating the statute were assigned the same seriousness level under the Sentencing Reform Act of 1981. *See State v. May*, 68 Wn. App. 491, 495, 843 P.2d 1102 (1993); RCW 9.94A.320. Currently, the

the alternative means are really separate offenses and jury unanimity was required.

■■ Our opinion in *Fortune* is dispositive of this issue.[8] *Fortune* holds that, under *Schad*, a difference in potential penalties for alternative means of committing a crime has no bearing on the question of whether the Legislature has violated due process by improperly defining the alternative means in the first place. Under *Schad*, therefore,

> the question of whether a defendant may, without jury unanimity, be constitutionally *convicted* under a statute that has alternative means with different mental states is a separate issue from whether he or she may be constitutionally *sentenced* under a statute that carries different penalties for alternative means of committing a crime. *See* 501 U.S. at 644 n.9.

*Fortune*, 77 Wn. App. at 633. The fact that the Legislature has assigned different seriousness levels to the three means of committing vehicular homicide does not require the conclusion that the mental states of the alternative means could not reasonably be considered general moral equivalents under the test in *Schad*. *Schad* has not altered the law in this area and the trial court, therefore, was not required to give the jury a unanimity instruction.

■ We note here, as we did in *State v. May*, 68 Wn. App. 491, 843 P.2d 1102 (1993), that a difference in the penalties that attach to alternative means may have implications at the sentencing phase of trial. Where a defendant is charged with alternate means which have different seriousness levels and is convicted by general verdict, a special interrogatory is required to ensure that the defendant will be sentenced using the proper standard range. *See May*, 68 Wn. App. at 498 n.6. That is precisely the procedure the trial court followed here. By special interrogatory, the jury stated that it had not unanimously found that Tang was guilty of

---

DWI means of committing vehicular homicide has a seriousness level of 9; vehicular homicide by operation of a vehicle in a reckless manner has a seriousness level of 8, and vehicular homicide by disregard for the safety of others has a seriousness level of 7. RCW 9.94A.320.

[8]*Fortune* was neither argued nor decided when the instant case was argued. Thus, the parties were not aware of our disposition of this issue.

the DWI means of committing vehicular homicide. Accordingly, the trial court sentenced him using the lower seriousness level assigned to the disregard for the safety of others means of committing the crime. Therefore, Tang did not receive a higher sentence in the absence of jury unanimity. There was no violation of his due process rights.

The judgment is affirmed.

KENNEDY, A.C.J., and GROSSE, J., concur.

Review denied at 127 Wn.2d 1017 (1995).