140 P.3d 614 (2006)
134 Wash.App. 462
STATE of Washington, Respondent,
v.
Stephanie Rena LILYBLAD, aka Stephanie Rena Paris, Appellant.
No. 33322-8-II.
Court of Appeals of Washington, Division 2.
August 8, 2006.
*615 George Timothy Gojio, Cowlitz County Prosecutor, Kelso, WA, for Respondent.
John A. Hays, Attorney at Law, Longview, WA, for Appellant.
BRIDGEWATER, J.
¶ 1 Stephanie Rena Paris appeals her conviction of felony telephone harassment. Under former RCW 9.61.230(3)(b) (2002)[1], a person who makes a telephone call, threatening to kill the person or any other person, is guilty of a class C felony. Following Division One's analysis in City of Redmond v. Burkhart, 99 Wash.App. 21, 991 P.2d 717 (2000), the trial court instructed the jury, "`Make a telephone call' refers to the entire call rather than the initiation of the call." Clerk's Papers (CP) at 17. But we find that the statute is ambiguous as to whether the caller must make the telephone call with the intent to harass, intimidate, torment, or embarrass another person or whether the caller at any time during the conversation may formulate the intent to harass, intimidate, torment, or embarrass another person. Because the statute is ambiguous, we apply the rule of lenity, and we interpret the statute in favor of the defendant, Paris. We hold that under the statute the State was required to prove that Paris: (1) initiated the telephone call *616 with the intent to harass, intimidate, torment, or embarrass Lorie Haley; and (2) harassed Haley by threatening to kill her or any other person. Thus, the trial court improperly instructed the jury on an element of the crime. We reverse and remand for a new trial.

FACTS
¶ 2 In December 2004, Stephanie Paris's two sons were living with their paternal grandmother, Lorie Haley, in Kalama. On December 24, Paris called Haley's home. One of the sons answered the telephone and shortly thereafter both sons were talking to Paris on separate telephones. Paris insisted that her eldest son "give the phone to [his] grandma." Report of Proceedings (RP) at 67. He initially refused her requests.
¶ 3 Eventually, Haley noticed that Paris's sons seemed to be upset. After checking the caller ID, Haley joined the conversation. When she did, "[Paris] said that she was working with a deputy thatand there was one waiting at the bottom of the road and she was coming to get the kids." RP at 11-12. Haley responded, "Stephanie, not on Christmas.. . . Don'tplease don't do this now." RP at 12.
¶ 4 Thereafter, Haley and Paris began arguing. According to Haley, Paris made a variety of threats, claiming that "she was going to have the kids no matter what she had to do." RP at 14. Paris even bragged that she had ways to kill Haley. Finally, Haley testified that Paris yelled, "[G]et off the phone you F-ing bitch, or I'll . . . Or I'll kill you." RP at 51. At that point, Haley hung up the telephone.
¶ 5 Two days later, Haley called the police about the telephone call and the Cowlitz County Sheriff's Office investigated. Eventually, the Cowlitz County Prosecutor charged Paris with one count of felony telephone harassment. A jury found Paris guilty.

ANALYSIS
¶ 6 For the first time on appeal, Paris argues that the instructions failed to correctly instruct the jury on all elements of felony telephone harassment.
¶ 7 Although she did not raise this issue at trial, she is not barred from raising it now. If the instructions allowed the jury to convict Paris without finding an essential element of the crime charged, the State has been relieved of its burden of proving all elements of the crime charged beyond a reasonable doubt. See State v. Stein, 144 Wash.2d 236, 240-41, 27 P.3d 184 (2001). A defendant cannot be said to have had a fair trial "if the jury must guess at the meaning of an essential element of a crime or if the jury might assume that an essential element need not be proved." State v. Smith, 131 Wash.2d 258, 263, 930 P.2d 917 (1997). Failure to instruct on an element of the offense is an error of constitutional magnitude and can be raised for the first time on appeal. See State v. Stearns, 119 Wash.2d 247, 250, 830 P.2d 355 (1992); RAP 2.5(a)(3).
¶ 8 In pertinent part, former RCW 9.61.230 states that:
Every person who, with intent to harass, intimidate, torment or embarrass any other person, shall make a telephone call to such other person:
. . . .
(3) Threatening to inflict injury on the person or property of the person called or any member of his or her family or household; shall be guilty of a gross misdemeanor, except that the person is guilty of a class C felony if either of the following applies:
. . . .
(b) That person harasses another person under subsection (3) of this section by threatening to kill the person threatened or any other person.
¶ 9 Paris asserts that the trial court's instructions did not require the State to prove that at the time she made the telephone call she had the intent to harass, intimidate, torment, or embarrass Haley.
¶ 10 Jury instruction 7 stated: "`Make a telephone call' refers to the entire call rather than the initiation of the call." Clerk's Papers (CP) at 17. Jury instruction 5 stated:

*617 To convict the defendant of the crime of Telephone Harassment, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about December 24, 2004, the defendant made a telephone call to Lori [sic] Haley;
(2) That the defendant threatened to kill Lori [sic] Haley;
(3) That the defendant acted with intent to harass or intimidate Lori [sic] Haley; and
(4) The acts occurred in the State of Washington.
CP at 15.
¶ 11 The trial court took the definitional instruction from Burkhart, 99 Wash.App. at 24-26, 991 P.2d 717. In Burkhart, Division One of this court stated that "make a telephone call" implies "that something is continually being `made' until the last step necessary for finality is taken and completed. In the case of a telephone call, the final step would be hanging up the telephone." Burkhart, 99 Wash.App. at 25-26, 991 P.2d 717. The Burkhart court also stated, "Thus, we hold that a caller who forms the intent to harass, intimidate, torment, or embarrass at any point in a telephone conversation is subject to penalty under RCW 9.61.230." Burkhart, 99 Wash.App. at 27, 991 P.2d 717 (emphasis added). The rationale of Burkhart is explained by the following quotation:
To interpret RCW 9.61.230 to govern only those calls dialed while the caller has the intent to intimidate defies common sense. Such a limited reading artificially narrows the scope of the statute and draws an illogical distinction between threats made by a caller who initiates the call with the intent to intimidate and those made by a caller who formulates the intent to intimidate mid-conversation. Both callers exhibit the same conductthe threatand the same intentintimidation. To interpret the statute as treating them differently is to unnaturally constrict its reach.
Burkhart, 99 Wash.App. at 25-26, 991 P.2d 717.[2]
¶ 12 Paris invites us to follow the rationale of State v. Wilcox, 160 Vt. 271, 628 A.2d 924 (1993), and similarly hold that the telephone call must be initiated with the intent to harass, intimidate, torment, or embarrass another person; Burkhart rejected Wilcox's holding. We decline Paris's invitation to follow Wilcox. But we also do not follow Burkhart. Instead, we hold that the statute is ambiguous as to: (1) whether the caller must make the telephone call with the intent to harass, intimidate, torment, or embarrass another person or (2) whether the caller at any time during the conversation may formulate the intent to harass, intimidate, torment, or embarrass another person.[3] Therefore, we must apply the rule of lenity in this circumstance. In State v. Jacobs, 154 Wash.2d 596, 600-01, 115 P.3d 281 (2005), our Supreme Court set forth the rule:
In construing a statute, the court's objective is to determine the legislature's intent. *618 [Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9, 43 P.3d 4 (2002)]. "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Id. at 9-10 [43 P.3d 4]. The "plain meaning" of a statutory provision is to be discerned from the ordinary meaning of the language at issue, as well as from the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole. Wash. Pub. Ports Ass'n v. Dep't of Revenue, 148 Wash.2d 637, 645, 62 P.3d 462 (2003); Campbell & Gwinn, 146 Wash.2d at 10-12, 43 P.3d 4. If after that examination the provision is still subject to more than one reasonable interpretation, it is ambiguous. Id. If a statute is ambiguous, the rule of lenity requires us to interpret the statute in favor of the defendant absent legislative intent to the contrary. In re Post Sentencing Review of Charles, 135 Wash.2d 239, 249, 955 P.2d 798 (1998); State v. Roberts, 117 Wash.2d 576, 585, 817 P.2d 855 (1991).
(Emphasis added). Thus, under the rule of lenity, we must interpret the statute in favor of Paris; this interpretation requires the State to prove that Paris had the intent to harass, intimidate, torment, or embarrass when she initiated the telephone call.
¶ 13 Because the jury was not required to find that Paris had the intent to harass, intimidate, torment, or embarrass at the initiation of the telephone call, the jury was not instructed on every element of the crime, as article I, section 3 of the Washington Constitution and the Fourteenth Amendment of the United States Constitution require. The cases of State v. Smith, 131 Wash.2d at 265, 930 P.2d 917 ("failure to instruct on an element of an offense is automatic reversible error"); State v. Salas, 74 Wash.App. 400, 407, 873 P.2d 578 (1994), rev'd on other grounds, 127 Wash.2d 173, 897 P.2d 1246 (1995); and State v. Haberman, 105 Wash. App. 926, 937, 22 P.3d 264 (2001), do not permit the conviction to stand when the instruction fails to state the law correctly.
¶ 14 After drawing all reasonable inferences in favor of the State, we find that the evidence is sufficient for a rational trier of fact to find that Paris had the intent to harass, intimidate, torment, or embarrass when she initiated the telephone call. See State v. Green, 94 Wash.2d 216, 220-22, 616 P.2d 628 (1980).
¶ 15 In this case, we are reversing Paris's conviction based on the instructional error. We are not reversing for insufficiency of the evidence, and thus Paris may be retried for the offense for which she was convicted. See State v. Markle, 118 Wash.2d 424, 440-41, 823 P.2d 1101 (1992).
¶ 16 Reversed and remanded for trial.
We concur: HOUGHTON and PENOYAR, JJ.
NOTES
[1] In 2003, the legislature reorganized the criminal provisions throughout the Revised Code of Washington to clarify and simplify the identification and referencing of crimes. This reorganization was not intended to effectuate any substantive change to RCW 9.61.230. See notes following RCW 2.48.180.
[2] At oral argument, the State argued that Burkhart stood for the proposition that it made no difference who initiated the call as long as one of the parties formulated the intent to intimidate during the telephone call. Burkhart does not stand for that proposition, but explicitly refers to the "caller" having the intent to intimidate. Its holding only addresses when the intent must be formed, not who initiated the call. Under our interpretation, consistent with Burkhart, the person prosecuted for telephone harassment must initiate the call.
[3] We find further support for our position in the Senate's debate on whether to include unwanted telephone solicitation as a crime under this statute. In a point of order, Senator Martin James Durkan claimed:

The original purpose of Senate Bill No. 77 was to cover those telephone calls which were mala in se, so to speak, and actually where the intent was one of a criminal act, where they intend to actually endanger the recipient of the phone call by obscene language or by harassment or by doing things in which the premeditation is there. The intent which the person has before he picks up the phone is a criminal intent to actually endanger the recipient in some manner. Now that was the original scope and object of Senate Bill No. 77.
SENATE JOURNAL. 40th Leg., Reg. Sess., at 195 (Wash.1967). But besides Senator Durkan's point of order, and lone recollection of the bill's purpose, we have no other legislative history to assist us in our interpretation of the statute. Thus, after examining Senator Durkan's statement, we find that the statute is still subject to more than one reasonable interpretation.