[No. 43162-5-I. Division One. January 24, 2000.]

THE CITY OF REDMOND, *Petitioner*, v. STEVEN L. BURKHART, *Respondent*.

22

*R.L. Mitchell* and *Jennifer Marie Boyle*, for petitioner.
*Cara M. Starr* of *Tucker & Stein, P.S.*, for respondent.

Coleman, J. — Steven Burkhart telephoned his wife and, after conversing a short while, became angry and threatened to kill her. The telephone harassment statute under which he was charged prohibits making a telephone call threatening injury with the intent to intimidate. This case presents a unique question—does "make" in the context of making a telephone call encompass all stages of the call until the call is terminated or does it describe only the initiation of the call? Based upon the statutory construction as well as the ordinary meaning of "make," we hold that "make," as used in RCW 9.61.230, refers to the call in its entirety.

Burkhart telephoned his estranged wife, Anita, to speak to their son. When she refused to put their son on the telephone, Burkhart became angry and a verbal argument ensued. Burkhart told Anita that he would kill her and that he would file for custody and deprive her of their son. The City of Redmond brought charges against Burkhart for telephone harassment. Burkhart moved to dismiss, relying on *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986). He alleged that the State could not prove each element necessary to the charged offense. The trial court dismissed the charges because it found that under the statute, the specific intent to intimidate must exist at the time the call is placed and that Burkhart did not have that intent when he initiated the call. The superior court affirmed the decision of the district court. The City appeals.

The telephone harassment statute under which Burkhart was charged provides:

> Every person who, with intent to harass, intimidate, torment or embarrass any other person, shall make a telephone call to such other person:
>
> (1) Using any lewd, lascivious, profane, indecent, or obscene words or language, or suggesting the commission of any lewd or lascivious act; or

(2) Anonymously or repeatedly or at an extremely inconvenient hour, whether or not conversation ensues; or

(3) Threatening to inflict injury on the person or property of the person called or any member of his or her family or household;

shall be guilty of a gross misdemeanor[.]

RCW 9.61.230.

### Statutory Interpretation

 Statutory construction or interpretation is reviewed de novo. *Clauson v. Department of Labor & Indus.*, 130 Wn.2d 580, 583, 925 P.2d 624 (1996); *State v. Merritt*, 91 Wn. App. 969, 973, 961 P.2d 958 (1998). If the statute is unambiguous, it is not subject to judicial interpretation and its meaning is derived from its language alone. *State v. Chester*, 133 Wn.2d 15, 21, 940 P.2d 1374 (1997). "Statutes are to be construed as a whole, considering all provisions in relation to each other and giving effect to each provision." *Merritt*, 91 Wn. App. at 973. If a term is not statutorily defined, the term is given its ordinary or common law meaning. *State v. Alvarez*, 128 Wn.2d 1, 11, 904 P.2d 754 (1995). In determining the ordinary meaning of the term, the court may use a dictionary. *See Zachman v. Whirlpool Fin. Corp.*, 123 Wn.2d 667, 671, 869 P.2d 1078 (1994); *City of Bellevue v. Lorang*, 92 Wn. App. 186, 193, 963 P.2d 198 (1998), *review granted*, 137 Wn.2d 1027 (1999).

Burkhart urges this court to adopt the interpretation applied to a similar statute in *State v. Wilcox*, 160 Vt. 271, 628 A.2d 924 (1993). The same issue was raised in *Wilcox* as is presently before this court. There, the defendant telephoned a town selectman to complain about matters. He reached the selectman's wife instead. Despite her repeated statements that her husband was not at home, the conversation lasted about 20 minutes and finally ended when the defendant asked her, "How would you like to be shot?" *Wilcox*, 628 A.2d at 925. The defendant was charged under Vermont's telephone harassment statute, which criminalizes the conduct of any "person who, with intent

to terrify, intimidate, threaten, harass or annoy, telephones another and . . . (ii) threatens to inflict injury or physical harm to the person or property of any person[.]" VT. STAT. ANN. tit. 13, § 1027(a)(ii). In reversing the conviction, the *Wilcox* court concluded that under the language of the statute "intent should be measured at the time the person telephones" or initiates the call. *Wilcox*, 628 A.2d at 926.

Although at first glance the statutes are similar, the language in the Vermont statute differs significantly from that in the statute at issue here. Vermont's statute penalizes an individual who, with intent to intimidate, "telephones another *and* . . . threatens to inflict injury[.]" VT. STAT. ANN. tit. 13, § 1027(a)(ii) (emphasis added). That construction indicates that the intent must be formed at the initiation of the call, and the threat must follow. Under the Washington statute, however, the threat describes the call. The statute provides that no person with the intent to intimidate "shall make a telephone call . . . *threatening* to inflict injury." RCW 9.61.230 (emphasis added). The statute thus specifically proscribes the type of call prohibited, which cannot be determined until after the call has been initiated. Because a threat must necessarily occur in conversation, it is reasonable to conclude that the Legislature intended "making a call" to encompass a broader meaning than the mere initiation of the call. Thus, it follows that the term "make" as it is used in RCW 9.61.230 is a continuing, rather than a discreet, process.

But even without that distinction between the two statutes, we are not persuaded by the *Wilcox* decision that the intent element must be in association with the dialing process. To interpret RCW 9.61.230 to govern only those calls dialed while the caller has the intent to intimidate defies common sense. Such a limited reading artificially narrows the scope of the statute and draws an illogical distinction between threats made by a caller who initiates the call with the intent to intimidate and those made by a caller who formulates the intent to intimidate mid-conversation. Both callers exhibit the same conduct—the threat—and

the same intent—intimidation. To interpret the statute as treating them differently is to unnaturally constrict its reach.

That "make" may be a continuing process rather than merely the initiation of a process is supported by dictionary definition. "Make" is defined as "to bring into existence by shaping or changing material, combining parts, etc.: to make a dress; to make a chair; to make a work of art . . . to produce; cause to exist; bring about: to make trouble; to make war . . . to write or compose, as a poem; . . . to do, effect: to make a bargain. . . . to deliver, utter, or put forth: to make a stirring speech[.]" WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY 866 (1989) (emphasis omitted). BLACK'S LAW DICTIONARY 955 (6th ed. 1990) includes the following definitions: "To cause to exist; . . . . [t]o do, perform, or execute; as to make an issue, to make oath, to make a presentment[.]" These definitions of "make" imply that something is continually being "made" until the last step necessary for finality is taken and completed. In the case of a telephone call, the final step would be hanging up the telephone.

First Amendment Challenge

Burkhart maintains that measuring the intent at the time the threats are made shifts the focus of the statute from conduct to protected speech. He relies upon *Wilcox* for the position that the caller's intent must be determined at the time the call is initiated to avoid First Amendment challenges to the statute. *Wilcox*, 628 A.2d at 925-26.

▮ We disagree. Although speech over the telephone is primarily protected speech, that speech may be properly regulated within the parameters of the First Amendment. The Washington Supreme Court has employed the nonpublic forum standard of speech regulation for speech made over the telephone. "Speech over the telephone, although constitutionally protected, may be regulated if 'the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.'" *City of Seattle v. Huff*, 111 Wn.2d 923, 927, 767 P.2d 572 (1989) (quoting

*Cornelius v. NAACP Legal Defense & Educ. Fund Inc.*, 473 U.S. 788, 806, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985)). It is reasonable to regulate threats. *See Huff*, 111 Wn.2d at 927. "Any viewpoint may still be expressed over the telephone without penalty *unless there is an accompanying threat.*" *Id.* at 928.

In the context of a telephone call, it is reasonable to regulate threats accompanied with the intent to intimidate regardless of their timing. To hold, as Burkhart suggests, that threats made when calling with the intent to intimidate are conduct but that those made later in the conversation, yet still with the intent to intimidate, are protected speech is to draw an illogical distinction. In either situation, the activity remains the same: (1) a threat, (2) with the intent to intimidate, (3) while using a telephone. The threat made at the initiation of the call is no less speech than that made later in conversation, and both are permissibly regulated under the First Amendment.

The statutory construction of RCW 9.61.230 as well as the dictionary definition suggests that making a telephone call is not just the initiating process of the call, but all portions of the call until its termination. Thus, we hold that a caller who forms the intent to harass, intimidate, torment, or embarrass at any point in a telephone conversation is subject to penalty under RCW 9.61.230. Accordingly, we reverse the trial court's dismissal and remand for trial.

AGID, A.C.J., and GROSSE, J., concur.