177 P.3d 686 (2008)
STATE of Washington, Petitioner,
v.
Stephanie Rena LILYBLAD,[] Respondent.
No. 79114-7.
Supreme Court of Washington, En Banc.
Argued September 27, 2007.
Decided February 7, 2008.
George Timothy Gojio, Cowlitz Co. Prosecutor, Kelso, WA, for Petitioner.
John A. Hays, Attorney at Law, Longview, WA, for Respondent.
*687 OWENS, J.
¶ 1 This case presents a conflict in the Court of Appeals regarding whether the crime of telephone harassment, RCW 9.61.230[1], requires the State to prove that a defendant formed the specific intent to harass the victim at the initiation of a call, or at any time during the call. The Court of Appeals, Division Two, reversed Stephanie Paris's conviction based on an improper jury instruction as to when the specific intent of that crime must form. The Division Two opinion conflicts with a previous Court of Appeals, Division One, opinion interpreting the same statute. We hold that telephone harassment requires that the defendant form the specific intent to harass at the time the defendant initiates the call to the victim.

FACTS
¶ 2 A jury convicted Paris on one count of felony telephone harassment, arising from a telephone call she placed to the home of Lorie Haley on December 24, 2004. Haley is the paternal grandmother of Paris's two sons, Tyler and Matthew, who were living with Haley at that time.
¶ 3 Some of the relevant facts surrounding the telephone call were disputed at trial. The State presented evidence that one of the boys answered the call from Paris and that the other boy soon picked up another phone to join the conversation. Paris told one of the boys to give the phone to Haley. Haley observed the boys talking on the phone and determined that they were speaking with their mother. Haley picked up a third phone to speak with Paris.
¶ 4 Paris initially told Haley that she was down the street from Haley's house and was coming to get the boys with the assistance of a police officer. Haley pleaded with Paris not to do so. This exchange "led to an argument," during which both Haley and Paris became "upset." Report of Proceedings at 14. At this point, Haley testified that Paris "started making threats," id., that "basically . . . she had ways to have me killed," id., and "that she would actually F-ing kill me," id. at 21; and "[s]he just said, get off the phone you F-ing bitch, or I'll . . . kill you," id. at 51. Haley hung up the phone after receiving these threats. The entire conversation lasted approximately five minutes. Haley reported the threatening phone call to the Cowlitz County Sheriffs Department the day after Christmas.
¶ 5 Paris testified that she called Haley's home on that day to wish her boys a merry Christmas. She testified that Haley answered the phone but hung up when Paris asked to speak with her children. Paris denied making any threat to Haley.
¶ 6 After the presentation of evidence, the court instructed the jury on the elements of felony telephone harassment. Specifically, jury instruction 5 stated:
To convict the defendant of the crime of Telephone Harassment, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about December 24, 2004, the defendant made a telephone call to Lori[e] Haley;
(2). That the defendant threatened to kill Lori[e] Haley;
(3) That the defendant acted with intent to harass or intimidate Lori[e] Haley; and
(4) The acts occurred in the State of Washington.
Clerk's Papers at 15. Furthermore, jury instruction 7 stated: "`Make a telephone call' refers to the entire call rather than the initiation of the call." Id. at 17. Paris did not object to these instructions at trial. State v. Lilyblad, 134 Wash.App. 462, 465-66, 140 P.3d 614 (2006).
¶ 7 Paris appealed her conviction on grounds that the court failed to instruct the jury correctly on the intent requirement for telephone harassment. Specifically, Paris argued *688 that RCW 9.61.230 requires the formation of criminal intent at the time a defendant initiates the telephone call. Id. at 466, 140 P.3d 614.[2]
¶ 8 The court held that the statute was ambiguous as to the moment when the intent to harass must form and therefore adopted the interpretation most favorable to Paris, in accord with the rule of lenity. Id. at 468-69, 140 P.3d 614; see State v. Jacobs, 154 Wash.2d 596, 601, 115 P.3d 281 (2005). Given such an interpretation, the court held that the trial court improperly instructed the jury on the intent element. Lilyblad, 134 Wash. App. at 469, 140 P.3d 614. However, the court further held that the evidence presented at trial remained sufficient to support a conviction and remanded the case for a new trial. Id. at 469-70, 140 P.3d 614. The State petitioned this court for review of the Court of Appeals opinion, based on a conflicting interpretation of the same statute by Division One in City of Redmond v. Burkhart, 99 Wash.App. 21, 991 P.2d 717 (2000). The State contends that the trial court gave proper instructions to the jury under Burkhart, which requires the specific intent to form at any time during the telephone call.

ANALYSIS

I
¶ 9 This case turns on the construction of RCW 9.61.230. This court reviews issues of statutory interpretation de novo. Clauson v. Dep't of Labor & Indus., 130 Wash.2d 580, 583, 925 P.2d 624 (1996). "Statutory construction begins by reading the text of the statute." State v. Roggenkamp, 153 Wash.2d 614, 621, 106 P.3d 196 (2005); see W. Telepage, Inc. v. City of Tacoma Dep't of Fin., 140 Wash.2d 599, 609, 998 P.2d 884 (2000). "When we read a statute, we must read it as a whole and give effect to all language used." In re Pers. Restraint of Skylstad, 160 Wash.2d 944, 948, 162 P.3d 413 (2007); see State v. Young, 125 Wash.2d 688, 696, 888 P.2d 142 (1995). "We give words in a statute their plain and ordinary meaning unless a contrary intent is evidenced in the statute." C.J.C. v. Corp. of Catholic Bishop, 138 Wash.2d 699, 708, 985 P.2d 262 (1999). The parties agree that the language of the statute is unambiguous but disagree on the proper meaning of such language.

II
¶ 10 Based on the jury instructions given in this case, the question for review centers on whether or not RCW 9.61.230(1) requires a defendant to form the intent to harass at the initiation of the telephone call to the victim, or at any moment during the telephone call. The statute proscribing telephone harassment states:
(1) Every person who, with intent to harass, intimidate, torment or embarrass any other person, shall make a telephone call to such other person:
(a) Using any lewd, lascivious, profane, indecent, or obscene words or language, or suggesting the commission of any lewd or lascivious act; or
(b) Anonymously or repeatedly or at an extremely inconvenient hour, whether or not conversation ensues; or
(c) Threatening to inflict injury on the person or property of the person called or any member of his or her family or household;
is guilty of a gross misdemeanor, except as provided in subsection (2) of this section.
(2) The person is guilty of a class C felony . . . if either of the following applies:
. . . .
(b) That person harasses another person under subsection (1)(c) of this section by threatening to kill the person threatened or any other person.
RCW 9.61.230.
¶ 11 The State argues that the statute requires the intent to harass (intimidate, torment, or embarrass/to form no sooner than the moment the person communicates a *689 threat.[3] While the statute refers to a person who makes a call with the intent to harass, the State argues that a person has not completely "made" a call to another person until the termination of the call. Therefore, the State concludes that the requisite intent to harass can be formed at any time during the making of the telephone call.
¶ 12 The State's position tracks Burkhart, in which Division One held that the intent required under RCW 9.61.230(1) may be formed at any point during a telephone call. In Burkhart, the defendant called his wife's home in order to speak to his son, who lived with her. After she refused to put the son on the telephone, the defendant threatened to kill her. Burkhart, 99 Wash.App. at 23, 991 P.2d 717. Upon appeal of his conviction, the defendant argued that his intent must be measured at the time he initiated the call, and that the evidence showed he did not intend to intimidate his wife at the time he initiated the call. Id. at 24-25; 991 P.2d 717. The defendant cited State v. Wilcox, 160 Vt. 271, 628 A.2d 924 (1993), in support of his interpretation.[4]
¶ 13 The Burkhart court rejected the defendant's interpretation. The court interpreted the intent requirement as modifying the threat communicated, and therefore intent could be formed at any time before the threat is made. 99 Wash.App. at 25-26, 991 P.2d 717. The court defined "making a telephone call" as an activity continually in process "until the last step necessary for finality is taken and completed." Id. at 26-27, 991 P.2d 717. The court noted that requiring the intent to form at the point of initiation "artificially narrows the scope of the statute." Id. at 25, 991 P.2d 717. In the court's view, such an interpretation "draws an illogical distinction between threats made by a caller who initiates the call with the intent to intimidate and those made by a caller who formulates the intent to intimidate mid-conversation." Id.
¶ 14 Division Two took issue with the Burkhart court's sole interpretation of the statute. Lilyblad, 134 Wash.App. at 468, 140 P.3d 614. The court recognized that Wilcox offered an equally reasonable interpretation of essentially the same statutory language. Therefore, the court held that the statute is ambiguous as to whether the caller must initiate the telephone call with the intent to harass another person, or whether the caller may formulate the intent at any time during the call. Id.
¶ 15 Both Court of Appeals interpretations fail to give proper effect to the language of RCW 9.61.230(1). The statute requires a person to make a call to another person. The person called must be the same person threatened. The unanimity between the person called and the person receiving the threat indicates that the caller must identify the intended victim at the time the call is "made" to that person, not at the time the threat is communicated. It follows that the intent to harass also must form at the time the call is "made" to the intended victim. See State v. Alexander, 76 Wash.App. 830, 837, 888 P.2d 175 (1995) ("`"The statute prohibits only telephone calls made with the intent to harass."'" (quoting State v. Dyson, 74 Wash.App. 237, 244, 872 P.2d 1115 (1994) (quoting Thorne v. Bailey, 846 F.2d 241, 243 (4th Cir.1988)))).
¶ 16 The statutory language supports this conclusion. The subordinate clause "with intent to harass, intimidate, torment or embarrass any other person" is inserted between, and completes the meaning of, the main clause "[e]very person who . . . shall make a telephone call to such other person." RCW 9.61.230(1). The conduct of making a telephone call, therefore, must include the intent to harass. A person who makes a call with *690 the intent to harass may use the telephone in one of three ways to achieve the intended result. ROW 9.61.230(1)(a), (b), (c).
¶ 17 Determining that the intent must form when the call is made leads to the ultimate question of when a call is made in deciding when the intent must be formed. Taken out of context, a common word such as "make" surely is subject to seemingly limitless interpretations. However, multiple meanings of a word do not necessarily create ambiguity. All words must be read in the context of the statute in which they appear, not in isolation or subject to all possible meanings found in a dictionary. "[A] single word in a statute should not be read in isolation, and . . . `"the meaning of words may be indicated or controlled by those with which they are associated."'" Roggenkamp, 153 Wash.2d at 623, 106 P.3d 196 (quoting State v. Jackson, 137 Wash.2d 712, 729, 976 P.2d 1229 (1999) (quoting Ball v. Stokely Foods, Inc., 37 Wash.2d 79, 87-88, 221 P.2d 832 (1950))).
¶ 18 Reading the verb "to make" in association with "a telephone call" clarifies the temporal scope of the act described in the statute. Similar to the Burkhart interpretation, discussed below, making a call includes the point of connection. Once connected, the call effectively has been made. A telephone call "`bring[s] into existence'" or "`cause[s] to exist'" a connection with another party. Burkhart, 99 Wash.App. at 26, 991 P.2d 717 (quoting WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY 866 (1989); BLACK'S LAW DICTIONARY 955 (6th ed.1990)). Such an act is completed at the moment it is received by the intended party at the other end. The remainder of the call is the product of the creation of the call and may last for an indefinite period. The Burkhart court cited to the act of "`mak[ing] war,'" which provides a good analogy to the act of making a call. Id. (quoting WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY 866 (1989)). A war is made when the first shot is fired, not the last. The duration of a war may last 6 days or 100 years. Regardless, it has been created at the first official act of aggression.
¶ 19 According to the State, through Burkhart, the verb "to make" refers to a continuous period from initiation to, termination of a single call. In Burkhart, the court held that a call "is continually being `made' until the last step necessary for finality is taken and completed." Id. The State also describes "[m]aking a telephone call" as "the process of lifting the receiver, dialing the telephone, conversing, and hanging up." Suppl. Br. of Pet'r at 7. Either definition requires the act of initiating a call to a person as part of making a call. Indeed, the State concedes that the statute requires the defendant to initiate the telephone call.[5] If making a call to another person requires the initiation of the call to that person, then a call made with the intent to harass also requires the formation of that intent at the initiation of the call. The fact that the person called must be the same person ultimately threatened reinforces this conclusion.
¶ 20 The State fails to attach any consequence to its own conclusion that the defendant must initiate the call. In fact, such a requirement is rendered meaningless if the intent can form at any time during a conversation. This court may not interpret any part of a statute as meaningless or superfluous. See Roggenkamp, 153 Wash.2d at 624, 106 P.3d 196 (requiring construction of statutes so "`no portion [is] rendered meaningless or superfluous.'" (internal quotation marks omitted) (quoting State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003))). One telephone conversation can touch on multiple subjects, during the course of which the person called could just as easily form the intent to harass as the person who initially placed the call. According to the State, however, under such circumstances the person who received the call could not be prosecuted, while the person who initiated the call could be prosecuted. It would defy common sense for the statute to distinguish between the person who initiates the call and the recipient *691 of the call if the intent could form at any time during the call.
¶ 21 The State's interpretation also fails to apply consistently throughout the statute. The statute provides three different ways of committing the crime of telephone harassment. Indeed, requiring the intent to form at the initiation of a call provides the only consistent interpretation in the context of the entire statute. Under RCW 9.61.230(1)(b), the crime is completed when a call is made "[a]nonymously or repeatedly or at an extremely inconvenient hour, whether or not conversation ensues" (emphasis added). A caller makes a call under this subsection at the point of initiation of the call. The subsection does not contemplate any further action beyond the initiation of the call. Therefore, the intent required for this subsection can form only at the initiation of the call.
¶ 22 The State proposes that the intent requirement for RCW 9.61.230(1)(b) is different from the requirements for RCW 9.61.230(1)(a) and (c). According to the State, whereas subsection (1)(b) requires intent to form at the initiation of the call, subsections (1)(a) and (1)(c) permit the intent to form at some indefinite time during the course of the entire telephone conversation. See Suppl. Br. of Pet'r at 10-11. The State's interpretation would create inconsistent requirements for the intent element of the crime. This court cannot accept the State's rationale, as the required intent must apply consistently throughout the statute. See Jindra v. Golden West, 52 Wash.App. 124, 128, 758 P.2d 518 (1988) ("this court should read a statute as a whole and harmonize its parts to avoid inconsistent results"). If the caller must initiate a call with the intent to harass for one section, then such a requirement must apply to all other sections of the statute. As discussed above, the acts defined in RCW 9.61.230(1)(a), (b), and (c) refer to the methods of executing the crime through the use of a telephone call. They do not determine when the intent must form. Regardless of how the intent is carried out, the intent to harass must have formed at the same time, when the decision is made to use the telephone.

III
¶ 23 The unambiguous meaning that we apply to RCW 9.61.230 is consistent with the overall purpose of the statute. The Burkhart court determined that such a reading "draws an illogical distinction" between threats made with the intent to harass at the initiation of the call and threats made with the intent that forms during the call. 99 Wash.App. at 25, 991 P.2d 717. However, Division One previously has stated, in the context of a First Amendment challenge, that the purpose of the statute serves the State's legitimate interests in protecting privacy concerns. Alexander, 76 Wash.App. 830, 888 P.2d 175. The court recognized that "[t]he gravamen of the offense is the thrusting of an offensive and unwanted communication upon one who is unable to ignore it." Id. at 837-38, 888 P.2d 175. It described a telephone call as intrusive conduct that required greater regulation than other forms of communication. Id. at 836, 888 P.2d 175 ("`[A] ringing telephone is an imperative which must be obeyed with a prompt answer.'" (alterations in original) (quoting People v. Weeks, 197 Colo. 175, 591 P.2d 91, 96 (1979))). As such, the court reasoned that the statute protected the public from conduct "`at the hands of persons who employ the telephone to torment others . . . and . . . from the intrusion of unwanted telephone calls'." Id. at 837, 888 P. 24 175 (alterations in original) (quoting City of Everett v. Moore, 37 Wash.App. 862, 865, 683 P.2d 617 (1984)).
¶ 24 This purpose is entirely consistent with our interpretation that the intent to harass must form at the initiation of the telephone call. The invasion of privacy occurs at the moment the call is initiated. "`[O]nce the telephone has been answered, the victim is at the mercy of the caller until the call can be terminated by hanging up.'" Id. at 836, 888 P.2d 175 (alteration in original) (quoting Weeks, 591 P.2d at 96). The same privacy concerns would not be protected during a call in which the intent to harass developed after the initiation of the call. If a call is accepted and legitimate communication ensues, then the call is not unwanted or intrusive, and the recipient is no longer at the mercy of the caller.

*692 CONCLUSION
¶ 25 We hold that the crime of telephone harassment requires proof that the defendant formed the intent to harass the victim at the time the defendant initiates the call to the victim. As the trial court failed to properly instruct the jury as to this element of the crime, we reverse Paris's conviction. Our holding does not bar retrial of this case because Paris concedes that the State presented sufficient evidence to support a finding that she formed the intent to harass at the initiation of the telephone call.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, Justices CHARLES W. JOHNSON, MARY E. FAIRHURST, BARBARA A. MADSEN, JAMES M. JOHNSON, RICHARD B. SANDERS, BOBBE J. BRIDGE, Justice Pro Tem., and TOM CHAMBERS.
NOTES
[] Stephanie Rena Lilyblad refers to herself as Stephanie Rena Paris in her brief, and we have used the name "Paris" throughout this opinion.
[1] Paris was charged with felony telephone harassment under former RCW 9.61.230(3)(b) (1992). In 2003, the legislature reorganized the criminal provisions throughout the Revised Code of Washington "to clarify and simplify the identification and referencing of crimes." Laws of 2003, ch. 53, § 1. This reorganization was not intended to "effectuate any substantive change to [RCW 9.61.230]." Id. Consistent with the spirit of the 2003 amendment, we cite to the current version of the statute.
[2] The Lilyblad court recognized that failure to instruct the jury on an element of a crime constitutes error of constitutional magnitude that can be raised for the first time on appeal. 134 Wash. App. at 466, 140 P.3d 614; see State v. Stearns, 119 Wash.2d 247, 249-50, 830 P.2d 355 (1992); RAP 2.5(a)(3). We agree.
[3] Paris was convicted under RCW 9.61.230(2)(b), which requires the communication of a threat to kill.
[4] In Wilcox, the court held that a similarly worded statute required intent to form at the initiation of the call, in order to protect the statute from First Amendment challenges. 160 Vt. at 273-74, 628 A.2d 924. The court noted that the formation of intent at initiation avoided the constitutional issue of protected speech by proscribing the conduct of making a telephone call. The Burkhart court rejected the First Amendment concerns raised in Wilcox. 99 Wash.App. at 26-27, 991 P.2d 717. Paris did not raise any First Amendment challenge in the Court of Appeals.
[5] The State initially had argued that the person charged with telephone harassment need not have initiated the phone call. Lilyblad, 134 Wash.App. at 467 n. 2, 140 P.3d 614. The State now concedes this point. Suppl. Br. of Pet'r at 6 n. 2.