205 P.3d 172 (2009)
STATE of Washington, Respondent,
v.
Noel C. SLOAN, Appellant.
No. 36404-2-II.
Court of Appeals of Washington, Division 2.
April 14, 2009.
*174 Megan Hallin, Cowlitz Co. Pros. Atty. Office, Kelso, WA, for Respondent.
Valerie Marushige, Attorney at Law, Kent, WA, for Appellant.
HUNT, J.
¶ 1 Noel C. Sloan appeals his jury conviction for telephone harassment based on his having telephoned and threatened to kill his wife, from whom he was separated. He argues that (1) the amended information was unconstitutionally vague; (2) the "to convict" instruction misstated the law; (3) the evidence does not support his conviction because his wife's friend, not his wife, answered his telephone call; and (4) his trial counsel rendered ineffective assistance. Holding that the State satisfied the pertinent element of telephone harassment by showing that the intended victim heard the threatening call, regardless of who answered the telephone, we affirm.

FACTS
¶ 2 Noel C. Sloan was married to Anna Sloan;[1] they were separated and in the process of a contentious divorce. A protection order prevented Sloan from having any contact with Anna.
¶ 3 On the evening of June 24, 2006, Sloan called Anna's apartment. Kandice Schulte, Anna's friend, answered the telephone. Schulte heard breathing on the other end of the line and said "hello" a couple of times. Anna, who was standing very close to Schulte, heard Sloan say on the phone, "You're f* *king dead." Both women recognized Sloan's voice.
¶ 4 The next evening, Anna went to the police station and filed a police report. Schulte met Anna at the police station. Both women wrote and signed statements about Sloan's threatening telephone call.
¶ 5 The State charged Sloan with one count of telephone harassment under RCW 9.61.230 and one count of violating a protection order. The jury convicted Sloan on both counts.
¶ 6 Sloan appeals his telephone harassment conviction.[2]

ANALYSIS

I. Information not Constitutionally Defective
¶ 7 Sloan first argues that the amended information is unconstitutionally vague because it "fails to set forth the essential elements of telephone harassment in such a way that Sloan is fully notified of both the illegal conduct and the crime with which he is charged." Br. of Appellant at 8. Specifically, Sloan argues that the amended information alleges that he intentionally called Anna "and/or" Schulte, but the State "unequivocally argued that Sloan intentionally called Anna and threatened to kill her." Br. of Appellant at 8. This argument fails.

A. Standards
¶ 8 Both the federal and the Washington constitutions accord a person accused of a crime the right to be informed of the nature and cause of the accusation. U.S. Const. amend VI; Wash. Const. art. I, § 22. In addition, Criminal Rule 2.1(a)(1) provides, in part, that "the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."
¶ 9 Although a defendant may challenge a defective charging document for the first time on appeal, where he has failed to mount such challenge before or during trial, we construe the document liberally in favor of validity. State v. Kjorsvik, 117 Wash.2d 93, 102, 812 P.2d 86 (1991). We use a two-pronged test to determine the validity of a charging document:
(1) Do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if *175 so, (2) can the defendant show that he ... was nonetheless actually prejudiced by the inartful language which caused lack of notice?
Kjorsvik, 117 Wash.2d at 105-06, 812 P.2d 86.

B. Charging Language
¶ 10 Count I of the amended information alleges:
The defendant, in the County of Cowlitz, State of Washington, on or about June 24, 2006, with the intent to harass, intimidate, torment, or embarrass any other person, did make a telephone call to Anna Sloan and/or Kandice Schulte threatening to kill that person or any other person; contrary to RCW 9.61.230(3)(b)[[3]] and against the peace and dignity of the State of Washington.
Clerk's Papers (CP) at 22.
¶ 11 Sloan argues that "[u]nder the two-prong test adopted in Kjorsvik, the amended information fails to meet the first prong because it lacks the necessary facts." Br. of Appellant at 8. But Sloan does not specify what facts he contends are missing under the first prong. And he expressly does not address the second prong or allege how the information prejudiced him.
¶ 12 Telephone harassment with a threat to kill comprises the following essential elements: (1) The defendant made a telephone call to another person; (2) the defendant intended to harass, to intimidate, to torment or to embarrass that other person when he initiated the call; (3) the defendant threatened to kill the person called or any other person; and (4) the call was made or received in Washington. RCW 9.61.230; 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 36.75, at 663 (3d ed.2008).
¶ 13 Here, the amended information contains all of these essential elements and the facts supporting those elements. Accordingly, we hold that the information was not constitutionally defective.

II. "To Convict" Instruction
¶ 4 Sloan next argues that we should reverse his conviction because the "to convict" instruction misstates the law by "allow[ing] the jury to incorrectly assume that it could find Sloan guilty of telephone harassment regardless of whether he made the call to Anna or [Schulte]." Br. of Appellant at 12. The State concedes that the "to convict" instruction misstated the law because it "would have allowed the jury to convict the defendant based upon a finding that he made the call to Kandice Schulte, instead of Anna Sloan"; the State argues, however, that the error was harmless. Br. of Resp't at 2. Again, Sloan's argument fails.

A. Standards of Review
¶ 15 We review claimed jury instruction errors de novo. State v. Yates, 161 Wash.2d 714, 749, 168 P.3d 359 (2007), cert. denied, ___ U.S. ___, 128 S.Ct. 2964, 171 L.Ed.2d 893 (2008). An alleged error in a "to convict" instruction is of constitutional magnitude; therefore, the defendant may challenge a "to convict" instruction for the first time on appeal. State v. Thomas, 150 Wash.2d 821, 842, 83 P.3d 970 (2004).
¶ 16 Erroneous jury instructions, including "to convict" instructions, are subject to harmless error analysis if the error does not relieve the State of its burden to prove each element of the crime charged. Id. at 844, 83 P.3d 970; State v. Brown, 147 Wash.2d 330, 332, 58 P.3d 889 (2002). An erroneous jury instruction that omits or misstates an element is harmless if it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. Id. at 341, 58 P.3d 889. This standard is met if uncontroverted evidence supports the omitted or misstated element. Id.
*176 ¶ 7 We review issues of statutory construction de novo. State v. Lilyblad, 163 Wash.2d 1, 6, 177 P.3d 686 (2008). Where statutory language is plain and unambiguous, we do not interpret the statute, but rather determine the legislative intent from the language of the statute itself. State v. Tvedt, 153 Wash.2d 705, 710, 107 P.3d 728 (2005).

B. Instruction
¶ 18 The "to convict" instruction states (in relevant part):
To convict the defendant of the crime of telephone harassment as charged in Count I of the Information, each of the following elements of the crime must be proved beyond a reasonable doubt.
(1) That on or about June 24, 2006, the defendant made a telephone call to Anna Sloan and/or Kandice Schulte;

(2) That the defendant made that telephone call with the intent to harass, intimidate, torment or embarrass Anna Sloan;

(3) That during the call, the defendant communicated a "true threat" to kill Anna Sloan; and
(4) That the acts occurred in the State of Washington.
CP at 60, Instruction No. 7 (emphasis added).
¶ 19 Sloan argues that this instruction is erroneous because it references "Anna Sloan and/or Kandice Schulte" in the first required finding, but only Anna in the second and third required findings. Sloan further argues that (1) under RCW 9.61.230(1), the person whom the defendant intends to harass, to intimidate, to torment, or to embarrass must be the same person as the person the defendant calls; and (2) the call had to be made to Anna "personally, not just ... to Anna's residence." The State essentially argues that a call to Anna's residence is sufficient. We hold that under the facts of this case, it was sufficient that Anna heard Sloan's telephoned threat to kill her, regardless of who initially picked up or held the telephone receiver.
¶ 20 The crucial question here is one of statutory interpretation, involving an issue of first impression  whether a call to Anna's apartment was a call to Anna where, although Anna's friend answered the telephone, Anna herself heard the threat that Sloan intended for her.
¶ 21 RCW 9.61.230 provides in relevant part:
Telephone harassment.
(1) Every person who, with intent to harass, intimidate, torment or embarrass any other person, shall make a telephone call to such other person:
(a) Using any lewd, lascivious, profane, indecent, or obscene words or language, or suggesting the commission of any lewd or lascivious act; or
....
(c) Threatening to inflict injury on the person or property of the person called or any member of his or her family or household; is guilty of a gross misdemeanor, except as provided in subsection (2) of this section.
(2) The person is guilty of a class C felony punishable according to chapter 9A.20 RCW if either of the following applies:
....
(b) That person harasses another person under subsection (1)(c) of this section by threatening to kill the person threatened or any other person.
¶ 22 The Supreme Court recently analyzed the telephone harassment statute in Lilyblad, but it did not address the specific issue here. 163 Wash.2d 1, 177 P.3d 686. Nevertheless, Lilyblad's analysis sheds light on this issue. Lilyblad telephoned the home of her sons' paternal grandmother and spoke with her children, who were living there. Id. at 4, 177 P.3d 686. At some point during the conversation, the grandmother picked up the telephone and Lilyblad threatened the grandmother. Id. The trial court had instructed the jury that "`[m]ake a telephone call' refers to the entire call rather than the initiation of the call," thus allowing the jury to find Lilyblad guilty if it found that she had formed the intent to harass the victim grandmother *177 at any point during the conversation. Id. at 5, 177 P.3d 686.
¶ 23 The Supreme Court, however, reversed Lilyblad's conviction, holding that "telephone harassment requires that the defendant form the specific intent to harass at the time the defendant initiates the call to the victim." Id. at 4, 177 P.3d 686. In reaching this conclusion, the court analyzed the verb "to make" to determine the moment at which a defendant must have formed the requisite intent: "[M]aking a call includes the point of connection. Once connected, the call effectively has been made.... Such an act is completed at the moment it is received by the intended party at the other end." Id. at 10, 177 P.3d 686. The court noted the "fact that the person called must be the same person ultimately threatened reinforces this conclusion," Id. at 10-11, 177 P.3d 686; "unanimity between the person called and the person receiving the threat indicates that the caller must identify the intended victim at the time the call is `made' to that person, not at the time the threat is communicated." Id. at 9, 177 P.3d 686.
¶ 24 Extending Lilyblad to its logical conclusion, the person to whom the call is made is determined by the defendant's intent  the call is "made" to the person the defendant intends to threaten when he picks up the telephone to place the call. Second, the court's statement that the act of making the call is completed when "it is received by the intended party" indicates that the defendant must both intend to call a person and actually communicate the threat to that specific person.
¶ 25 The facts, taken together with the "to convict" instruction, meet this test: (1) at the time he placed the call, Sloan intended to telephone Anna to threaten to kill her; and (2) Anna did receive Sloan's telephoned threat when she clearly heard it coming from the telephone receiver, which her friend was holding. Nothing in the statute or the instruction required the State to prove or the jury to find that the "intended party" (Anna) answered the telephone. It is sufficient that she heard the intended telephoned threat, recognized that it was Sloan making the call, and knew he was directing the threat to kill at her.
¶ 26 Our conclusion here is consistent with a decision by Division One of our court, which affirmed a conviction for felony telephone harassment where the threat was left as a message on the victim's answering machine. State v. Tellez, 141 Wash.App. 479, 170 P.3d 75 (2007) (holding that definition of true threat need not be included in information or "to convict" instruction). Although the identity of the person to whom the call was made was not an issue in Tellez, the holding supports our holding here  that a defendant need not communicate the threat directly to the person to whom the telephone call is "made" if the threat is ultimately heard by that intended person.
¶ 27 Because the jury here convicted Sloan of telephone harassment with threat to kill, it necessarily found that when Sloan said, "You're f* *king dead," the "you" was Anna and the statement was a "true threat" to kill her. Anna was standing close enough to Schulte to hear Sloan's threat. Thus, similar to the message left on the victim's answering machine in Tellez, Anna ultimately and immediately heard Sloan make the threat, even though Anna was not holding the telephone receiver herself when Sloan threatened to kill her.
¶ 28 If the intent to harass, intimidate, torment, or embarrass must be formed at the time the defendant initiates the call, then it is more consistent to interpret the phrase "make a telephone call to such other person" as calling the intended victim's telephone. It would be absurd to relieve Sloan of criminal liability because Anna's friend, rather than Anna, fortuitously picked up and answered Anna's telephone, especially where Anna clearly heard Sloan utter the threat intended for her as he spoke it. We construe the law to avoid absurd results. State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003).
¶ 29 Even assuming, as the State concedes, without deciding, that the "to convict" instruction was erroneous, we hold that any such error was harmless. Under the facts of this case, there is no chance that the jury believed Sloan intended or directed his threat to kill to anyone other than Anna. The *178 uncontroverted evidence showed that Sloan intended to place a call to Anna at her residence, that he intended to threaten her with this phone call, and that he achieved his purpose when Anna heard and was frightened by his telephoned threat to kill her. Contrary to Sloan's assertion, the addition of "and/or Kandice Schulte" in the first portion of the "to convict" instruction did not relieve the State of its burden to prove each element of the crime charged; nor did it cause Sloan to be wrongly convicted.
¶ 30 We hold, therefore, that the "to convict" instruction did not mislead the jury, did not cause Sloan to be wrongly convicted, and, therefore, was not reversible error.

III. No Ineffective Assistance of Counsel
¶ 31 Lastly Sloan argues that his counsel was ineffective for failing to object to the faulty information and the faulty "to convict" instruction. In light of our finding no reversible errors in the information or the "to convict" instruction, we do not reach this ineffective assistance of counsel issue.
¶ 32 Affirmed.
We concur: VAN DEREN, C.J., and HOUGHTON, J.
NOTES
[1] For clarity, we refer to Anna Sloan as "Anna." We intend no disrespect.
[2] Sloan does not appeal his conviction for violating the protection order.
[3] The State erroneously cited RCW 9.61.230(3)(b) instead of RCW 9.61.230(2)(b). As Sloan acknowledges, such citation errors are not prejudicial if the error did not mislead the defendant. State v. Hopper, 118 Wash.2d 151, 159-160, 822 P.2d 775 (1992). Sloan does not argue that this error misled him.