# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | No. 78985-6-I |
| | ) | |
| E.M. (D.O.B.: 07/10/15), | ) | DIVISION ONE |
| | ) | |
| A Minor Child. | ) | |
| | ) | |
| JULIA MORGAN BIRYUKOVA, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| DEPARTMENT OF CHILD, YOUTH, | ) | |
| AND FAMILIES, | ) | |
| | ) | |
| Respondent. | ) | FILED: February 24, 2020 |
| | ) | |

MANN, A.C.J. — We granted discretionary review in this dependency action to determine whether a family member can retain counsel for a dependent child, without seeking appointment by the trial court. Julia Morgan, E.M.'s mother, appeals the trial court's order striking the notice of appearance of an attorney retained by E.M.'s maternal grandmother. Morgan contends that the trial court erred in concluding that RCW 13.34.100(7) applies to privately retained attorneys. We disagree and affirm.

I.

Morgan has three children; her youngest, E.M. is the subject of this dependency. Morgan's other two children from a previous relationship are M.M. and S.M. M.M. is in the care of her father and lives in Florida. Morgan does not have contact with M.M.

In November 2011, S.M. disappeared. Morgan's car ran out of gas so she and M.M. walked to a gas station, leaving two-year-old S.M. in the car. When Morgan returned to the car, S.M. was gone. Law enforcement confirmed that Morgan's car had not run out of gas but were unable to locate S.M. To this day, S.M. has never been found. Criminal charges have not been filed, but the case remains open and ongoing.

When E.M. was born July 2015, the hospital contacted Child Protective Services (CPS) expressing concerns about Morgan's mental health. Morgan has been diagnosed with obsessive compulsive disorder (OCD). E.M.'s father was incarcerated when E.M. was born, has a significant criminal history including domestic violence and violations of no-contact orders, and a history of substance abuse.

The Department filed a dependency petition for E.M. shortly after he was born. Morgan agreed to the dependency and the court placed E.M. in the care of his maternal grandmother, Nadia Biryukova. The dependency order allowed Morgan to live in Biryukova's home with E.M., but required supervision of Morgan's contact with E.M. As time went on, the court relaxed Morgan's supervision requirements.

In April 2017, Biryukova reported to the Department that Morgan took E.M. out of her home around 8:30 p.m., bathes E.M. late at night, and that she was concerned for E.M.'s wellbeing and would lose another grandchild. The Department filed a motion to place E.M. in foster care. The trial court ordered that Morgan move out of Biryukova's

home, rather than placing E.M. in foster care. Morgan sought discretionary review of the trial court order, but this court denied her request. In addition, the Department sought new psychological evaluations to address S.M.'s disappearance and Morgan's trauma associated with not having S.M. or M.M. in her life. Morgan refused to discuss S.M.'s disappearance at the recommendation of her criminal attorney.

Morgan began residing with her friend and mentor James Kelly. Kelly actively participated in E.M.'s life as a visitation monitor for Morgan. In May 2018, Morgan moved for a change of placement from Biryukova to "another suitable person," naming Kelly as the proposed placement. Biryukova supported the placement. E.M.'s father filed a competing motion to change placement, contending that E.M. should be placed in a licensed foster home because it was a more neutral environment that would support his reunification with E.M. The Department opposed placement with Kelly and deferred to the court on the father's placement suggestion.

A King County Court Commissioner heard argument on Morgan's motion to change placement on June 1, 2018. The Commissioner granted Morgan's motion with certain conditions and denied the father's motion, concluding that foster care was not in E.M.'s best interest.

E.M.'s father filed a motion to revise the Commissioner's order, which the Superior Court granted. The court cited concerns for E.M.'s safety and indicated that placement in foster care was in E.M.'s best interest. The Department removed E.M. from Kelly's home and placed him in foster care, where he has remained for the past year.

Five days after E.M. was placed in foster care, attorney Aimee Sutton[1] filed a notice of appearance as counsel for E.M. Biryukova retained Sutton for E.M. and paid a deposit into a trust account on E.M.'s behalf. On July 18, 2018, Sutton contacted the Department's counsel, Mary Ann Comiskey, to get E.M.'s contact information. Comiskey indicated that she needed "a few days to determine whether [she was] going to oppose this 'representation' or not." At the time, the Department did not know who had retained Sutton on E.M.'s behalf.

On July 19, 2018, a court appointed special advocate (CASA), Emma Bergin, appeared in the case.[2] Sutton attempted contact with the Department again on July 23, 2018. Sutton filed a motion to reconsider E.M.'s placement in foster care on July 23, 2018, without meeting E.M. because "the right to family integrity is a legal right" and Sutton "believed that E.M. was more likely than not to suffer harm unless an action to reconsider placement in foster care was taken." On July 24, 2018, Comiskey responded that she would not provide E.M.'s contact information and that "[u]ntil the Judge makes a decision about [Sutton's] representation, the Department will not allow [Sutton] to attend a visit with [Morgan]."

In addition to the motion for reconsideration, Sutton requested an evidentiary hearing on the proposed change of placement, arguing that the trial court violated state law by not deferring to Morgan's wishes in regards to E.M.'s placement. The trial court issued a preliminary order denying Sutton's request for an evidentiary hearing on the

---

[1] Aimee Sutton was appointed to serve as a Judge with the King County Superior Court on January 30, 2019. We refer to Judge Sutton without the honorific, as in the original proceeding. No disrespect to Judge Sutton is intended.

[2] There had not been a CASA or guardian ad litem (GAL) appointed to the case for the previous nine months.

motion for reconsideration. The trial court required all parties to file a written response to "address the child's request for alternate placement with the maternal grandmother."

On July 30, 2018, the Department filed an objection to the notice of appearance by Sutton and its response to the motion for reconsideration. The Department social worker provided a declaration explaining her "serious concerns" about placing E.M. in Biryukova's care due to a contentious relationship between Morgan and Biryukova. E.M.'s father filed a response to the motion for reconsideration and moved to strike Sutton's appearance. Morgan filed a motion for reconsideration, supporting Sutton's motion. Bergin filed a response to Sutton's motion and stated she took "no position on the placement motion due to her recent appointment." Kathleen Martin, attorney for the CASA program, argued that the notice of appearance by Sutton was "contrary to the procedure required by RCW 13.34.100" because Sutton was attempting to appear "without an order for appointment of counsel for the child."

The dependency court struck Sutton's notice of appearance and determined that the motion for reconsideration was not properly before the court. The court relied on RCW 13.34.100 and Rules of Professional Conduct (RPC) 1.2, 1.4, and 1.8. The court concluded that "if anyone seeks to have an attorney appointed for [E.M.], they must follow the provisions set forth in RCW 13.34.100(7)." Morgan sought discretionary review of this decision. We granted review.

II.

Morgan argues that the dependency court lacked authority under RCW 13.34.100 to strike Sutton's notice of appearance. Statutory interpretation is a question of law and is reviewed de novo. Jametsky v. Olsen, 179 Wn.2d 756, 761-62, 317 P.3d

1003 (2014). When determining the meaning of a statute, we give effect to the plain meaning of the language. Jametsky, 179 Wn.2d at 762. If the statute is ambiguous, the court may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent. Jametsky, 179 Wn.2d at 762. Juvenile court statutes are to be liberally construed, with the welfare of the minor children being the primary consideration. State ex rel. Smith v. Superior Court of King County, 23 Wn.2d 357, 360, 161 P.2d 188 (1945).

If, however, the dependency court does have an oversight role in the appointment of private counsel for dependent children, our review is for abuse of discretion. Pub. Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co., 124 Wn.2d 789, 812, 881 P.2d 1020 (1994) (finding the trial court did not abuse its discretion when it refused to disqualify insured public utility district's counsel due to potential prejudice to insureds).

### A.

At the outset, the State contends that this case is moot because attorney Sutton is now a judge on the King County Superior Court and cannot serve as E.M.'s counsel. "A case is moot if a court can no longer provide effective relief." Orwick v. City of Seattle, 103 Wn.2d 249, 253, 692 P.2d 793 (1984). The Department's position on mootness in this case is too narrow. We can provide effective relief because, if we reverse, Biryukova could retain other private counsel. Thus, this case is not moot.

### B.

Morgan contends that the trial court lacked authority under RCW 13.34.100(7)(b)(i) to strike Sutton's appearance. We disagree.

-6-

In Washington, children in dependency or termination proceedings do not have a categorical due process right to court-appointed counsel. In re Dependency of S.K.-P., 200 Wn. App. 86, 95, 401 P.3d 442 (2017). "Statutory law and court rules grant juvenile courts the discretion to decide whether to appoint counsel to a child during dependency proceedings." S.K.-P., 200 Wn. App. at 95. To determine whether the circumstances require appointment of counsel, the trial court examines the facts on a case-by-case determination using the three-part test from Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). In re Dependency of M.S.R., 174 Wn.2d 1, 14, 271 P.3d 234 (2012). Under Mathews, the court considers "the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions." M.S.R., 174 Wn.2d at 14 (citation omitted).

GALs and CASAs provide invaluable information to the courts, but "GALs and CASAs are not trained to, nor is it their role to, protect the legal rights of the child."[3] M.S.R., 174 Wn.2d at 20. Only legal counsel can advocate for the legal rights and interests of a child. M.S.R., 174 Wn.2d at 21 (attorneys "can facilitate and expedite the resolution of disputes, minimize contentiousness, and effectuate court orders"); In re Dependency of Lee, 200 Wn. App. 414, 453, 404 P.3d 575 (2017) (describing the way an attorney may counsel a disabled child, which included appealing the denial of Developmental Disabilities Administration services, applying for a Medicaid waiver, and representing the child at administrative hearings with the Department). "[T]he GAL is

---

[3] RCW 13.34.030(11) defines guardian ad litem to mean "a person, appointed by the court to represent the best interests of a child in a proceeding under this chapter, or in any matter which may be consolidated with a proceeding under this chapter." This section also states that a CASA "appointed by the court to be the guardian ad litem for the child, or to perform substantially the same duties and functions as a guardian ad litem, shall be deemed to be guardian ad litem for all purposes and uses of this chapter."

required to advocate for the child's interest and is required to inform the court of any 'views or positions expressed by the child on issues pending before the court' and to 'represent and be an advocate for the best interests of the child.'" M.S.R., 174 Wn.2d at 20 (citing RCW 13.34.105(b), (f)). Because of their differing roles and the factual nature of dependency actions, both a GAL and an attorney may be necessary and beneficial in certain cases.

The legislature has recognized that dependent children may need appointed counsel. Accordingly, RCW 13.34.100(7) provides that

> (a) The court may appoint an attorney to represent the child's position in any dependency action on its own initiative, or upon the request of a parent, the child, a guardian ad litem, a caregiver, or the department.
>
> (b)(i) If the court has not already appointed an attorney for a child, or the child is not represented by a privately retained attorney:
>
> (A) The child's caregiver, or any individual, may refer the child to an attorney for the purposes of filing a motion to request appointment of an attorney at public expense; or
>
> (B) The child or any individual may retain an attorney for the child for the purposes of filing a motion to request appointment of an attorney at public expense.[4]

Morgan contends that the statute's reference to "a privately retained attorney" in RCW 13.34.100(7)(b)(i) demonstrates that a family member can retain private counsel for a dependent child, without seeking court appointment. The Department agrees that read in isolation, RCW 13.34.100(7)(b)(i) suggests the legislature envisioned a privately retained attorney for a child in at least some circumstances. But words in a statute should not be read in isolation from the remainder of the statute. State v Lilyblad, 163 Wn.2d 1, 9, 177 P.3d 686 (2008). The Department urges that we read RCW

---

4 (Emphasis added.)

13.34.100(7)(b)(i) in conjunction with RCW 13.34.100(7)(a) which generally authorizes the dependency court to appoint an attorney to represent the child on its own initiative or upon request of an interested party. We agree with the Department that when drafting RCW 13.34.100, the legislature envisioned a gatekeeping role being performed by the dependency court.[5]

The legislative history supports our interpretation. In 2010, the legislature amended RCW 13.34.100(6). There, the legislature required the Department or the child's GAL to inform the child of his or her right to be represented by counsel on his or her twelfth birthday, and each year thereafter. LAWS OF 2010, ch. 180 § 2 (now codified as RCW 13.34.100(7)(c)). In 2014, the legislature amended RCW 13.34.100(6), requiring mandatory appointment of counsel to a child, within six months of granting a petition to terminate the parent and child relationship and when there is no remaining parent with parental rights. LAWS OF 2014, ch.108 § 2 (now codified as RCW 13.34.100(6)(a)). At the same time, the legislature also amended RCW 13.34.100(7)(a) and (b) to provide for discretionary appointment of counsel to children. LAWS OF 2014, ch. 108 § 2 (now codified as RCW 13.34.100(7)(a), (b)). These successive amendments demonstrate the legislature's concern that certain children in dependency actions have counsel representing their rights and interests.

In the 2010 amendment, the legislature added the following findings:

> The legislature recognizes that when children are provided attorneys in their dependency and termination proceedings, it is imperative to provide them with well-trained advocates so that their legal rights around health, safety, and well-being are protected. Attorneys, who have different skills

---

[5] The Department correctly points out that RCW 13.34.100 contains the term "appoint" or "appointment" 35 times, repeatedly referring to the court's authority to decide when appointment of a GAL and or attorney is appropriate.

and obligations than guardians ad litem and court-appointed special advocates, especially in forming a confidential and privileged relationship with a child, should be trained in meaningful and effective child advocacy, the child welfare system and services available to a child client, child and adolescent brain development, child and adolescent mental health, and the distinct legal rights of dependent youth, among other things. Well-trained attorneys can provide legal counsel to a child on issues such as placement options, visitation rights, educational rights, access to services while in care and services available to a child upon aging out of care.

LAWS OF 2010, ch. 180. These findings demonstrate that the legislature was concerned with more than just a child's access to an attorney; the legislature wanted to ensure that attorneys representing children are trained in dependency issues and subject to the court's oversight.[6]

We hold that, while RCW 13.34.100(7) contemplates both privately retained counsel and publicly funded counsel in dependency proceedings, privately retained counsel must seek appointment by the trial court under RCW 13.34.100(7).

## C.

We next consider whether the trial court abused its discretion in striking the notice of appearance. In making its decision the dependency court relied, in part, on RPC 1.2, 1.4, and 1.8. Morgan argues that supervision of the RPCs is delegated to the state bar association and not individual judges. We disagree to the extent that the trial court considered whether the appearance of privately retained counsel without appointment was consistent with the RPCs.

RCW 13.34.100(6)(a) addresses potential conflicts of interest. The statute provides that "[t]he court may appoint one attorney to a group of siblings, unless there is

---

[6] It is clear from the record that Sutton was qualified and well-trained in dependency matters. This court must be mindful, however, of the need recognized by the legislature that requires judicial oversight of appointment of all attorneys representing children in dependencies.

a conflict of interest or such representation is otherwise inconsistent with the rules of professional conduct." RCW 13.34.100(6)(a). This again demonstrates the legislature's concern that courts have oversight of the appointment process to all dependent children.

Here, the dependency court expressed concerns about privately retained counsel's ability to comply with RPC 1.2, the duty to consult with the client about the scope of representation, RPC 1.4, the duty to communicate promptly with the client because of E.M.'s infancy, and RPC 1.8. RPC 1.8(f) states:

> (f) A lawyer shall not accept compensation for representing a client from one other than the client unless:
>
> (1) the client gives informed consent;
>
> (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
>
> (3) information relating to representation of a client is protected as required by Rule 1.6.

Informed consent "denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." RPC 1.0A(e).

Once a child is declared "dependent," legal custody is transferred to the State. In re Dependency of Schermer, 161 Wn.2d 927, 942, 169 P.3d 452 (2007). E.M. is an infant and cannot give informed consent. Here, Sutton placed Biryukova's payment in a trust account and did not draw on that payment, recognizing that E.M. could not give informed consent and that Biryukova did not have authority to consent on E.M.'s behalf.

-11-

This was entirely appropriate. The error was in not seeking appointment by the superior court in advance of seeking access and bringing motions.

The trial court did not abuse its discretion in considering the RPCs in reaching its decision to strike Sutton's notice of appearance.

We affirm.

_____Mann, ACJ_____

WE CONCUR:

_____        _____Smith, J._____